## LOUIS SANZONE ET AL. *v.* BOARD OF POLICE COMMIS-SIONERS OF THE CITY OF BRIDGEPORT ET AL.
### (14102)

SHEA, GLASS, COVELLO, BORDEN and F. X. HENNESSY, Js.

Argued March 22—decision released June 11, 1991

*Robert R. Sheldon,* with whom were *Frank A. Bailey* and, on the brief, *T. Paul Tremont,* for the appellants (plaintiffs).

*John H. Barton,* associate city attorney, with whom was *Carolyn C. Mihalek,* assistant city attorney, for the appellees (defendants).

SHEA, J. We are asked to determine the meaning and scope of a proviso contained within General Statutes § 52-557n, § 13 of the Tort Reform Act of 1986, No. 86-338 of the 1986 Public Acts.[1] That statute addresses

---

[1] "[General Statutes] Sec. 52-557n. LIABILITY OF POLITICAL SUBDIVISION AND ITS EMPLOYEES, OFFICERS AND AGENTS. (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performace of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been com-

the liabilities and immunities of political subdivisions, their employees, officers and agents. The trial court concluded that the proviso barred the plaintiffs' tort and indemnification claims against a city and its police officers arising out of an accident allegedly caused by a defective traffic light. It therefore granted the defendants' motion to strike and the plaintiffs' motion for judgment, from which the plaintiffs appealed. We affirm.

The plaintiffs[2] sued the city of Bridgeport, its board of police commissioners, the members of the board, the superintendent of police, and a police sergeant, all "acting as" the city's "traffic authority," for damages the named plaintiff's wife suffered when, according to the complaint, the car in which she was a passenger collided with another vehicle after the traffic light at an intersection simultaneously signalled green to both vehicles, one traveling north, the other traveling west.

menced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision."

[2] Louis Sanzone brought this action individually and in his capacity as conservator for the estate of his wife, Joan Sanzone. As conservator, he asserts rights that belong to his wife. Thus, although only one person brought this action, we will use the term "plaintiffs."

The plaintiffs alleged that this malfunction was caused because the defendants collectively had "failed to maintain" and inspect the traffic light as required by General Statutes § 14-314a[3] or because they had "disassembled" one half of the "traffic control" in violation of General Statutes § 14-314b.[4] The complaint contained five counts: count one, charging the board of police commissioners, the superintendent and the sergeant with negligence under § 52-557n and with nuisance; count two, claiming loss of consortium arising from the same tortious conduct; count three, charging the members of the police commission, the superintendent and the sergeant with misperformance or "violation" of their ministerial duties; count four, claiming loss of consortium arising from the same tortious conduct; and count five, seeking indemnity by the city, pursuant to General Statutes (Rev. to 1987) § 7-465 (a),[5] for the damages sought in count three.

[3] "[General Statutes] Sec. 14-314a. PERIODIC REVIEW OF TRAFFIC CONTROL SIGNALS AND SIGNS. The commissioner of transportation, in the case of state highways, and the traffic authority, as defined in section 14-297, in the case of highways maintained by towns, cities or boroughs, shall periodically, but not less than once in each three years, review all traffic control signals, devices, signs and markings on highways within their respective jurisdictions to assure their necessity and effectiveness and shall report the results of such review to the state traffic commission. The commissioner of transportation and the traffic authority shall thereafter make such revision, alteration or removal of such signals, devices, signs and markings as the state traffic commission directs."

[4] "[General Statutes] Sec. 14-314b. INJURY TO OR REMOVAL OF TRAFFIC CONTROL DEVICES, SIGNS OR LIGHTS. Any person who, without lawful authority, attempts to or in fact alters, defaces, injures, knocks down or removes any official traffic control device, signal light, railroad sign, portable warning light or barricade, or any other sign or light or any part thereof, shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both."

[5] "[General Statutes (Rev. to 1987)] Sec. 7-465. ASSUMPTION OF LIABILITY FOR DAMAGE CAUSED BY EMPLOYEES OR MEMBERS OF LOCAL EMERGENCY PLANNING DISTRICTS. JOINT LIABILITY OF MUNICIPALITIES IN DISTRICT DEPARTMENT OF HEALTH OR REGIONAL PLANNING AGENCY. (a) Any town, city or borough, notwithstanding any inconsistent provision of

On the defendants' motion, the trial court struck the complaint in its entirety, holding that § 52-557n made

law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. This section shall not apply to physical injury to a person caused by an employee to a fellow employee while both employees are engaged in the scope of their employment for such municipality if the employee suffering such injury or, in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of such injury. If an employee or, in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such employee or, in the case of his death, his dependent, shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. This section shall not apply to libel or slander proceedings brought against any such employee and, in such cases, there is no assumption of liability by any town, city or borough. Any employee of such municipality, although excused from official duty at the time, for the purposes of this section shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law. Such municipality may arrange for and maintain appropriate insurance or may elect to act as a self-insurer to maintain such protection. No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefore arose nor unless written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section. In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any ver-

a defective highway claim under General Statutes § 13a-149,[6] commonly referred to as the "highway defect statute," a plaintiff's exclusive remedy against a municipality for damages resulting from a "highway defect." It held, further, that because § 7-465 (a) required a municipality to indemnify its officers for their negligent acts, § 52-557n also barred an action against municipal officers for damages resulting from a highway defect. In their appeal, the plaintiffs claim that: (1) § 52-557n permits them to bring nuisance and negligence claims against a municipality whether or not they also have a valid claim under § 13a-149; (2) if it does not, § 52-557n is unconstitutional; and (3) even if § 13a-149 would be the exclusive remedy for a claim involving a highway defect, the plaintiffs' claims should not have been stricken prior to a determina-

dict rendered in such action against such employee. No mention of any kind shall be made of such statement by any counsel during the trial of such action. As used in this section, 'employee' shall include a member of a town board of education and any teacher, including a student teacher doing practice teaching under the direction of such a teacher, or other person employed by such board. Nothing in this section shall be construed to abrogate the right of any person, board or commission which may accrue under section 10-235."

[6] "[General Statutes] Sec. 13a-149. DAMAGES FOR INJURIES BY MEANS OF DEFECTIVE ROADS AND BRIDGES. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuarcy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby.

tion at trial that the facts alleged would support a valid claim under § 13a-149.

## I

Section 52-557n of the General Statutes was enacted as § 13 of the Tort Reform Act of 1986. The Tort Reform Act was drafted in response to rapidly rising insurance rates, which, some believed, would be curtailed if tort liability could be limited and systematized.[7] As finally enacted, the act represents a complex web of interdependent concessions and bargains struck by hostile interest groups and individuals of opposing philosophical positions.

Sections 13 and 14 of the act address municipal liability. Section 13, now § 52-557n, entitled "Liability of political subdivision and its employees, officers and agents," contains two subsections. Subsection (a) sets forth general principles of municipal liability and immunity, while subsection (b) sets forth nine specific situations in which both municipalities and their officers are immune from tort liability. Section 14 of the act modifies the required notice provision contained within § 13a-149, the highway defect statute, by removing language which previously had permitted a party to satisfy the statutory notice requirement, the condition precedent to recovery of damages from a municipality under that statute, by filing a complaint within the ninety day notice period. The act does not refer to § 7-465.

Section 52-557n (a), § 13 (a) of the act, provides in pertinent part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof act-

[7] See, e.g., remarks of Senator Richard Johnston, offering the bill. 29 S. Proc., Pt. 10, 1986 Sess., p. 3491.

ing within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; *provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149 of the General Statutes.* (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Emphasis added.) The defendants' motion to strike, and the trial court's decision, were based squarely upon the italicized proviso.

The plaintiffs countered by asserting, first, that the section as a whole was intended to codify the existing common law on municipal liability, using the phrase "except as otherwise provided" in subdivision (a) (1) as a catch-all savings clause designed to preserve any unenumerated causes of action; and second, that the proviso itself simply reaffirmed the continuing viability of claims brought pursuant to § 13a-149 or, alternatively, eliminated a plaintiff's rights to bring nuisance actions against a municipality while leaving alternative theories of liability, e.g., negligence, intact.

The guideposts of statutory construction are familiar. Our task is to find the expressed intent of the legislature, "that is, the intention of the legislative body 'as found from the words employed to make it manifest.' " *Park Regional Corporation* v. *Town Plan & Zoning*

*Commission,* 144 Conn. 677, 682, 136 A.2d 785 (1957). We seek the intent of the legislature "not in what it meant to say, but in what it did say." *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 571, 512 A.2d 893 (1986). Thus, "[t]he actual intent, as a state of mind, of the members of a legislative body is immaterial, even if it were ascertainable." *Park Regional Corporation* v. *Town Plan & Zoning Commission,* supra.

To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from "extrinsic aids," e.g., the legislative history. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 637–38, 513 A.2d 52 (1986); *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985). If the legislative history and purpose are also ambiguous, we may resort to "intrinsic aids," the technical rules of statutory construction. *Farms Country Club, Inc.* v. *Carini,* 172 Conn. 439, 443, 374 A.2d 1094 (1977); see also *Citizens to Preserve Overton Park, Inc.* v. *Volpe,* 401 U.S. 402, 412 n.29, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 48.01. In applying these principles, we follow the "golden rule of statutory interpretation"; 2A J. Sutherland, supra, § 45.12, p. 54; that the legislature is presumed to have intended a reasonable, just and constitutional result. See *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 126, 584 A.2d 1172 (1991); *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985); *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508 (1955); *Camp* v. *Rogers,* 44 Conn. 291, 298 (1877); see also 2A J. Sutherland, supra, §§ 45.11, 45.12.

The meaning of § 52-557n (a) is far from plain. At a minimum, it is unclear whether the proviso modifies only subdivision (a) (1) (C) or (A) and (B) as well as (C); it is unclear what is intended by the words "Except as otherwise provided by law" that begin subsection (a) and, if they conflict with the words of the clause, "provided, no cause of action shall be maintained," which language prevails; and it is unclear whether the limitation on liability of political subdivisions contained in the section is intended to supersede the indemnification statute, § 7-465.

Unfortunately, the legislative history of § 52-557n is worse than murky; it is contradictory. The only explicit reference to the proviso in question sheds no light on its meaning but merely repeats its language with minor variations.[8] The transcripts of legislative hearings on the bill are full of heated debate over § 13, dealing with municipal liability, but the legislators seemed not to agree as to its meaning. The record of legislative debate does indicate that § 13 was intended, in a general sense, both to codify and to limit municipal liability, but it also reflects confusion with respect to precisely what part of the preexisting law was being codified, and what part was being limited.[9] Cf. *Robinson* v. *Unemploy-*

---

[8] Senator Richard Johnston, presenting the bill to the senate, summarized: "The next area deals with political subdivision liability. And these section[s] codify certain elements of common law liability as they apply to political subdivisions, by identifying three areas where liability exists. First, the negligent act within the [s]cope of employment or official duties. Second, negligence in the course of conduct involving profit or pecuniary benefit to that political subdivision. Third, the creation of a nuisance, except in those instances where a defective road or bridge case can only be brought under other existing statutes." 29 S. Proc., Pt. 10, 1986 Sess., p. 3445.

[9] See, e.g., remarks of Representative Robert B. Jaekle, 29 H.R. Proc., Pt. 16, 1986 Sess., pp. 5834, 5928; Senator Richard Johnston, 29 S. Proc., Pt. 10, 1986 Sess., p. 3445 (stating that § 13 [a] was intended to codify existing law, including the common law). In contrast, Representative Irving Stolberg, was concerned that both §§ 13 and 14 contained an "extensive" "sacrifice of individual rights." 29 H.R. Proc., Pt. 16, 1986 Sess., p. 5891.

*ment Security Board of Review,* 181 Conn. 1, 8–9, 20, 434 A.2d 293 (1980).

The sparks flung from the legislative forge fail to illuminate the statute's meaning. We must seek guidance, therefore, from the traditional rules of English grammar and of statutory construction.

## A

"A proviso is said to remove special cases from the general enactment and provide for them specially." 1A J. Sutherland, supra, § 20.22a; see also 2A J. Sutherland, supra, § 47.08. Provisos do not usually expand the scope of a statute, but restrict it. 2A J. Sutherland, supra, § 47.08. While sometimes a proviso is said to limit only the language immediately preceding it, the better rule is that the proviso limits the entire section or, as the case may be, the subsection within which it is incorporated. See 1A J. Sutherland, supra, § 20.22, and vol. 2A, § 47.09. That the language at issue is written as a "proviso" does not, therefore, necessarily imply that it modifies only subdivision (C) dealing with nuisance actions against municipalities.

Indeed, the punctuation of § 52-557n (a) (1) suggests that the proviso was intended to limit all of subdivision (a) (1), not merely subdivision (a) (1) (C). Although punctuation is not generally considered an immutable

Senator Anthony Avallone described § 13 as "a section on municipal liability that I defy anybody in here to explain to me. . . . I've been trying for two weeks to find municipal lawyers who understand it. And they can't." 29 S. Proc., Pt. 10, 1986 Sess., p. 3482. Representative Michael D. Rybak, opposing the bill, said: "Even those who want this bill may find when this bill gets to the other side of the street and the ladies and gentlemen with the black robes review this bill, an entirely different result may obtain." 29 H.R. Proc., Pt. 22, 1986 Sess., p. 8096. Representative David Lavine also commented: "Now it may be that all this works the way the majority leader suggests that it might. And the word is might. It may be that it won't. But for sure tonight at five minutes after one, we don't know that answer." 29 H.R. Proc., Pt. 16, 1986 Sess., p. 5902.

aspect of a legislative enactment, given its unstable history; see *State* v. *Roque,* 190 Conn. 143, 152, 460 A.2d 26 (1983); see also 2A J. Sutherland, supra, § 47.15; it can be a useful tool for discerning legislative intent. *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65 (1963); *Connecticut Chiropody Society, Inc.* v. *Murray,* 146 Conn. 613, 617, 153 A.2d 412 (1959). Thus, where a qualifying phrase is separated from several phrases preceding it by means of a comma, one may infer that the qualifying phrase is intended to apply to *all* its antecedents, not only the one immediately preceding it. 2A J. Sutherland, supra, § 47.33.

Where, however, the punctuation mark after each succeeding phrase is a semicolon, as here, its use to separate the proviso from the immediately preceding phrase indicates that the proviso was intended to apply to all the antecedent propositions. Compare *Connecticut Chiropody Society, Inc.* v. *Murray,* supra. If anything, semicolons " 'separate with more distinctness than commas.' " *West Hartford* v. *Thomas D. Faulkner Co.,* 126 Conn. 206, 210–11, 10 A.2d 592 (1940), quoting Webster's New International Dictionary (2d Ed.). To indicate a less distinct separation between the proviso and the immediately preceding phrases, which are set off by semicolons, the drafters would have used either no punctuation or a comma.

We conclude that the proviso at issue was intended to modify the entire content of subdivision § 52-557n (a) (1), not merely subdivision (a) (1) (C). Thus, simplified, the statute states: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: [(A), (B) or (C)] . . . provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149 of the General Statutes." The proviso's language, *"no* cause of

action shall be maintained," (emphasis added) further supports this construction; were the proviso intended to restrict only nuisance actions, it should instead have said "no cause of action *in nuisance* shall be maintained."

## B

We must next construe the meaning of the proviso itself and analyze its relationship with the savings clause, "[e]xcept as otherwise provided by law." The plaintiffs point out that prior to the 1986 Tort Reform Act, our case law "otherwise provided" that a party could bring an action in nuisance against a municipality instead of resorting to the highway defect statute, § 13a-149, if the nuisance arose from the positive and intentional acts of the municipality. See, e.g., *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 479 A.2d 793 (1984); *Murphy* v. *Ives,* 151 Conn. 259, 196 A.2d 596 (1963); *Aerotec Corporation* v. *Greenwich,* 138 Conn. 116, 82 A.2d 356 (1951); *Karnasiewicz* v. *New Britain,* 131 Conn. 691, 42 A.2d 32 (1945). The plaintiffs argue that, as some legislators claimed, the words "[e]xcept as otherwise provided by law" were intended to preserve without modification *all* existing law, common and statutory, including such actions for positive nuisance.

We decline to read the savings clause as broadly as the plaintiffs request; to do so would render the statute a nullity. The legislature could not have intended the general language of the introductory clause to swallow up and nullify the section's other provisions. See *Board of Education* v. *State Board of Labor Relations,* supra, 127; see also *Board of Education* v. *Freedom of Information Commission,* 217 Conn. 153, 160, 585 A.2d 82 (1991); *DeFonce Construction Co.* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); cf. 2A J. Sutherland, supra, § 47.12. Despite remarks by some legislators to

the effect that the word "law" would include the common law, we must limit the word's meaning, within § 52-557n (a), to state and federal statutes. While we strictly construe statutes purporting to limit the common law; *State* v. *Ellis,* supra, 444; *Ahern* v. *New Haven,* 190 Conn. 77, 82, 459 A.2d 118 (1983); see 3 J. Sutherland, supra, § 61.01; the principle that the legislature does not enact a meaningless statute must be controlling.

In short, we construe § 52-557n to provide that an action under the highway defect statute, § 13a-149, is a plaintiff's exclusive remedy against a municipality or other political subdivision "for damages resulting from injury to any person or property by means of a defective road or bridge." It also, therefore, precludes a joint action seeking such damages against a municipality and its officer pursuant to § 7-465 (a);[10] otherwise, the proviso in § 52-557n would be stripped of all meaning, for § 7-465 (a) would permit a plaintiff to reach the result forbidden by § 52-557n: the imposition of tort liability on a municipality for a highway defect claim.[11]

C

We do not, however, construe § 52-557n to bar a plaintiff from asserting causes of action in tort against

[10] General Statutes § 7-465 (a) begins with the clause: "Any town, city or borough, *notwithstanding any inconsistent provision of law,* general, special or local, shall pay on behalf of any employee of such municipality . . . ." (Emphasis added.) The italicized language simply indicates that § 7-465 (a) overrides inconsistent statutes and rules of common law existing at the time of its enactment. The legislature may not restrict the right of future legislators to amend other statutes. 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 47.13.

[11] As the plaintiffs point out, not all injury-producing features of roads fall within the statutory definition, "defective road or bridge." See, e.g., *Salzman* v. *New Haven,* 81 Conn. 389, 71 A. 500 (1908) (city's excavation of a road during repair of highway, which caused plaintiff's cellar to flood, was not a highway defect under the statute); see also *Morse* v. *Fair Haven East,* 48 Conn. 220, 222 (1880).

those individuals whose actual conduct was a proximate cause of the injury. At common law, municipal officers were liable for their own torts, but the municipality, their municipal "master," was not vicariously liable for those torts. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 132; see *Evon* v. *Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989); *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 165, 544 A.2d 1185 (1988); but see W. Williams, Liability of Municipal Corporations for Torts §§ 11, 16 (proprietary functions), § 25 (ministerial duties). Section 7-465 (a) effectively circumvented the general common law immunity of municipalities from vicarious liability for their employees' acts by permitting injured plaintiffs to seek indemnification from a municipal employer for such acts under certain circumstances and after conformance with certain statutory requirements, but it did not bar a plaintiff from seeking redress from those employees. *Fraser* v. *Henninger,* 173 Conn. 52, 56–57, 376 A.2d 406 (1977).

We agree with the trial court that § 52-557n removes torts related to highway defects from the class of torts for which municipal employees may be indemnified under § 7-465 (a). There is no reason to believe, however, that the legislature intended to eliminate an injured plaintiff's common law right to seek damages from individual municipal employees. Indeed, whereas § 52-557n (b) immunizes both "political subdivisions" and "any employee, officer or agent acting within the scope of his employment or official duties" from liability in enumerated cases, including certain types of highway defects, § 52-557n (a), by contrast, addresses only the liability of "political subdivisions." "A plaintiff's failure to sustain his complaint against the municipality is no reason for turning the plaintiff out of court if he can sustain his complaint against the employee." *Fraser* v. *Henninger,* supra, 57.

The trial court construed the complaint to allege liability on the part of the individual defendants based solely upon their breach of ministerial duties concerning the creation and maintenance of the traffic control signals at the intersection where the accident occurred. The plaintiffs do not challenge this reading of their complaint. The court held that "[t]he proper operation of a roadway system by a police department is a governmental function" and that it is a "discretionary governmental function" like the operation of a police department, citing *Gordon* v. *Bridgeport Housing Authority*, supra. Implicitly, it concluded that police maintenance of traffic signals, whatever the statutory requirements for such maintenance, was a discretionary governmental duty which conferred qualified immunity upon the individual defendants who performed that duty. The plaintiffs have not challenged that basis for the trial court's decision.[12] Nor have they ever, in their memoranda to the trial court or in their briefs and argument to this court, suggested that they intended to assert claims against the named individuals in their individual capacities except as a basis for imposing liability on the municipality. We need not, therefore, consider further the propriety of the trial court's conclusion on that issue.

## II

The plaintiff maintains that the statute, thus construed, unconstitutionally deprives a plaintiff of the right to bring actions that existed at common law. This claim is without merit.

Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for

[12] In the context of their argument that General Statutes § 52-557n permits them to sue the municipality for its employees' breach of ministerial duties either directly or by way of General Statutes § 7-465 (a), the plaintiffs assert that the trial court never ruled on the sufficiency of their claims under those theories of liability.

an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." "[A]ll rights derived by statute and the common law extant at the time of the adoption of article first, § 10, are incorporated in that provision." *Gentile* v. *Altermatt,* 169 Conn. 267, 286, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Sharp* v. *Mitchell,* 209 Conn. 59, 64, 546 A.2d 846 (1988).

Our decision in *Gentile* constitutionalized the maxim "for every wrong, there is a remedy," with respect to injuries recognized before 1818. Enactment of our state constitution protected the right to redress for injuries, but it did not enshrine any particular causes of action. Thus, in *Gentile* we upheld the no-fault insurance statute, which barred automobile accident suits for sums under $400, because the statute gave the injured party the right to receive damages from his own statutorily required insurance policy. Similarly, in *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 512 A.2d 893 (1986), we upheld a provision in the products liability statute of limitations that barred employees from bringing products liability suits more than ten years after the manufacturer had "last parted with possession" of the product, because our workers' compensation statute gave the injured employee the right to receive workers' compensation benefits. In *Gentile,* we also recognized that the legislature was constitutionally permitted to replace a common law cause of action with a statutory scheme that incidentally deprived certain individuals of their right to redress, so long as such individuals were among those on whom the statute conferred new benefits formerly unavailable at common law. The focus of any claim of unconstitutionality under our holding in *Gentile* must rest, therefore, upon an evaluation of whether " *'some* form of legal recourse

for injured parties' '' as a class "is retained" despite a legislative decision to "limit the availability of certain constitutionally incorporated common law causes of action." (Emphasis added.) *Burkert* v. *Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 73 n.9, 579 A.2d 26 (1990).

In short, *Gentile* asks three questions: (1) Was redress available for the type of injury at issue, whether the redress was conferred by statute or at common law, prior to 1818? (2) Is redress presently available for the type of injury at issue, notwithstanding the enactment of the challenged statute? (3) If the challenged statute deprives certain individuals of redress for the type of injury at issue, does the statute, in exchange for that deprivation, confer commensurate aggregate benefits upon any class of individuals to which those individuals belong?

Applying these questions to the plaintiff's claim, we conclude that our construction of the proviso in § 52-557n (a) (1) does not make the statute constitutionally defective. The availability of redress under § 13a-149 permits the legislature constitutionally to eliminate common law remedies, if any,[13] that may have

---

[13] The plaintiffs have presented no authority to support the proposition that, *prior to 1818,* one injured by reason of a defect in a highway or bridge had the right to bring suit in nuisance or negligence against a municipality, which would otherwise have been immune from suit, in addition to or in lieu of an action under the precursor to General Statutes § 13a-149, an "Act concerning Bridges"; Public Statute Laws of the State of Connecticut 1808–1820 (1820) book 1, tit. xxix, §§ 1, 3–5, pp. 119–20 ("An Act relating to Bridges"); see also Public Statutes and Laws of the State of Connecticut (1821 Rev.) tit. 48, §§ 1, 3–5, 6, pp. 266–67 ("An Act relating to Highways and Bridges"). This court has found no case in which an action in "nuisance" was used as an alternative means of recovery for injuries caused by a highway defect.

It appears, however, that an injured party may have been entitled to bring a common law action in negligence (that is, "on the case") against a municipality, based upon the municipality's breach of its statutory duty, imposed by the "Act concerning Bridges," to repair the roads. *Lewis* v. *Litchfield,*

existed prior to 1818[14] and that continued to exist prior to the Tort Reform Act of 1986,[15] for injuries arising out of highway defects. Our decision in *Gentile* does not require the legislature intentionally to craft a new remedy in order to displace an old one. It is enough if there exists an adequate "remedy by due course of law" for the underlying injury.

A plaintiff's right to redress under § 13a-149 is not, of course, coextensive with his rights in a common law tort action. Section 13a-149 does not permit recovery unless the defect was the sole proximate cause of the injury, even if the concurring cause was a third party's negligence. *Lukas* v. *New Haven,* 184 Conn. 205, 207, 439 A.2d 949 (1981); see also *Bartram* v. *Sharon,* 71 Conn. 686, 43 A. 143 (1899) (barring recovery where the victim was a passenger and the driver, by exercise of ordinary diligence, could have avoided the accident). As construed by case law, § 13a-149 also does not permit recovery for consequential damages. *Chidsey* v.

2 Root 436 (1796); *Eldredge* v. *Pomfret,* 1 Root 270 (1791); but see *Jones* v. *New Haven,* 34 Conn. 1, 13 (1867); *Chidsey* v. *Canton,* 17 Conn. 475, 478 (1846).

[14] "Although it is correct to say that article first, § 10, protects 'constitutionally incorporated' common law or statutory rights from abolition or significant limitation, these rights include only those in existence in 1818." *Sharp* v. *Mitchell,* 209 Conn. 59, 64, 546 A.2d 846 (1988). The legislature is empowered to abrogate latter-day common law causes of action at its will. *Gentile* v. *Altermatt,* 169 Conn. 267, 283, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1975); see also *Munn* v. *Illinois,* 94 U.S. 113, 134, 24 L. Ed. 77 (1876). The nuisance action formerly available against a municipality in addition to a plaintiff's rights under General Statutes § 13a-149; see, e.g., *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 479 A.2d 794 (1984); *Murphy* v. *Ives,* 151 Conn. 259, 196 A.2d 596 (1963); *Aerotec Corporation* v. *Greenwich,* 138 Conn. 116, 82 A.2d 356 (1951); *Karnasiewicz* v. *New Britain,* 131 Conn. 691, 42 A.2d 32 (1945); would appear to be such a latter-day common law cause of action.

[15] Since 1818, the evolving common law has eliminated any right to an action in negligence against a municipality arising from an injury caused by a highway defect. *Lukas* v. *New Haven,* 184 Conn. 205, 439 A.2d 949 (1981); *Scoville* v. *West Hartford,* 131 Conn. 239, 38 A.2d 681 (1944); *Porpora* v. *New Haven,* 119 Conn. 476, 177 A. 531 (1935).

*Canton,* 17 Conn. 475, 478 (1846). On the other hand, § 13a-149, as construed by case law, permits recovery against a municipality if the municipality had nothing more than "constructive notice" of the defect. See, e.g., *Linn* v. *Hartford,* 135 Conn. 469, 472, 66 A.2d 115 (1949). On balance, § 13a-149 affords a constitutionally adequate right to redress for injuries arising out of highway defects.

It is true that some plaintiffs who are limited to their recourse under § 13a-149 may be deprived of a remedy. The plaintiff who fails within ninety days to provide the municipality with the statutorily required notice will be barred from any recovery. We have previously rejected a challenge to the constitutionality of § 13a-149 on the ground that its notice provision violated article first, § 10 of our constitution. See *Shally* v. *Danbury & Bethel Horse R. Co.,* 64 Conn. 381, 387, 30 A. 135 (1894); cf. *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 584, 512 A.2d 893 (1986); *Vilcinskas* v. *Sears, Roebuck & Co.,* 144 Conn. 170, 174–75, 127 A.2d 814 (1956) (addressing statutes of limitation). The statutory notice assists a town in settling claims promptly in order to avoid the expenses of litigation and encourages prompt investigation of conditions that may endanger public safety, as well as giving the town an early start in assembling evidence for its defense against meritless claims. The notice requirement strikes a balance between the public benefit and the private right to seek a remedy. "[S]uch reasonable conditions and regulations as are demanded by the public good, and have for their object the promotion of the cause of justice and the general convenience, do not amount to an infringement" of our constitution. *Curtis* v. *Gill,* 34 Conn. 49, 54 (1867).

We note also that in providing that "no cause of action" shall be maintained in nuisance or negligence that might be brought under the highway defect stat-

ute, the legislature eliminated the victim's spouse's right to recover for loss of consortium. An action for loss of consortium "is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse" is barred. *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 494, 408 A.2d 260 (1979). Section 13a-149 does not permit damages for loss of consortium, but permits recovery only by the injured "traveler." *Tuckel* v. *Argraves,* 148 Conn. 355, 170 A.2d 895 (1961); *Frechette* v. *New Haven,* 104 Conn. 83, 132 A. 467 (1926); *Lounsbury* v. *Bridgeport,* 66 Conn. 360, 368, 34 A. 93 (1895); *Chidsey* v. *Canton,* supra, 479.

At common law, prior to 1818, a husband could bring an action on the case seeking damages for loss of consortium resulting from his wife's injury. See *Marri* v. *Stamford Street Rail Co.,* 84 Conn. 9, 14–17, 78 A. 582 (1911); *Cross* v. *Guthery,* 2 Root 90 (1794). Neither the plaintiffs, nor our own research, has been able to uncover any negligence action brought prior to 1818 against a municipality, however, that sought damages for loss of consortium. Considering that our earlier decisions in *Eldredge* v. *Pomfret,* 1 Root 270 (1791), and *Lewis* v. *Litchfield,* 2 Root 436 (1796), which suggest the existence of a common law negligence action arising out a highway defect in addition to the remedy afforded by the statute, appear to be anomalies as recognized by the consistent refusal of this court, during the late nineteenth and early twentieth centuries, to expand liability against towns beyond the liability explicitly imposed by statute; see *Seidel* v. *Woodbury,* 81 Conn. 65, 66, 70 A. 58 (1908); *Lavigne* v. *New Haven,* 75 Conn. 693, 695, 55 A. 569 (1903); *Jones* v. *New Haven,* 34 Conn. 1, 13 (1867); *Chidsey* v. *Canton,* supra, 478; we decline to assume that one whose wife was injured by a defective highway would have been able, prior to 1818, to seek damages for loss of consortium

from the town responsible. The legislature was free, therefore, to take away any such right that may have subsequently developed, at " '[its] will, or even at [its] whim . . . .' " *Gentile* v. *Altermatt,* supra, 283, quoting *Munn* v. *Illinois,* 94 U.S. 113, 134, 24 L. Ed. 77 (1876).

Moreover, § 52-557n, by implicitly barring claims for loss of consortium based on highway defects, "does not restrict the right to redress for an actionable injury but, rather, redefines the injury or the class of persons injured to which this constitutional right of redress attaches. What is of constitutional dimensions . . . is the right of redress and not the nature of the particular injury for which redress is sought. . . . [I]t is within the province of the legislature to redefine or abolish existing definitions of injury since it is within its province to create, abrogate or redefine the 'established law.' " *Gentile* v. *Altermatt,* supra, 284–85. Insofar as the statute merely "redefines the injury or the class of persons injured"; id., 284; "it does not infringe upon the right to redress." Id., 285.

### III

The plaintiffs contend that the trial court's decision to grant the motion to strike improperly prevented them from pleading in the alternative as expressly permitted by Practice Book § 137.[16] If we had construed § 52-557n to bar only nuisance actions against municipalities for injuries caused by highway defects, it would, of course, have been improper for the trial court to have struck all of the plaintiffs' counts. We have, however, construed § 52-557n to bar, in addition to nuisance actions, actions in negligence or for breach of ministerial duty brought against the municipality directly or derivatively by way of the indemnification statute,

---

[16] "[Practice Book] Sec. 137. ——ALTERNATIVE RELIEF

"The plaintiff may claim alternative relief, based upon an alternative construction of his cause of action."

§ 7-465. The motion to strike was properly granted with respect to those theories imposing liability upon the municipality.

At oral argument, however, the plaintiffs put forth a slightly different proposition. In essence, they argue that whether the accident was caused by a "highway defect" cannot be determined until trial, and that until the status of the accident's cause can be determined, their other legal theories must remain viable as alternative means of redress.[17] We disagree.

Section 13a-149 provides that "[a]ny person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair." Whether a highway is defective may involve issues of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law which may be determined on a motion to strike. See *Older* v. *Old Lyme,* 124 Conn. 283, 285, 199 A. 434 (1938). Whether or not the accident *was* caused by the defective traffic light, the plaintiffs' claim that it was caused by the defective traffic light is, as a matter of law, a claim based upon a "defective road."

This court has not yet had occasion to decide whether a faulty traffic light comes within the statutory term "defective road," but the courts of other states, construing state highway defect statutes similar to our own, have repeatedly reached that conclusion. See, e.g., *Brown* v. *State Highway Commission,* 202 Kan. 1, 444 P.2d 882 (1968) (obstructed stop sign was a "defect in a state highway" under highway defect statute, Kan. Stat. Ann. § 68-419 [1961 Sup.]); *Fox* v. *Columbia,* 260 S.C. 367, 196 S.E.2d 105 (1973) (defective traffic light

---

[17] We note that the plaintiffs have a claim pending against the city of Bridgeport brought under General Statutes § 13a-149. Presumably, that complaint alleges that the faulty traffic light was a highway defect under the statute.

was a "defect in any street" under highway defect statute, S.C. Code § 47-70 [1962]); *Fretwell* v. *Chaffin,* 652 S.W.2d 755, 756 (Tenn. 1983) (obscured stop sign was an " 'injury caused by defective, unsafe or dangerous condition of any street' " under statute providing exception to governmental immunity from negligence actions); see also *Thorpe* v. *Denver,* 30 Colo. App. 284, 494 P.2d 129 (1972) (defective traffic light is a "dangerous condition in [the city's] streets" which, under earlier case law, made the city liable in negligence for injuries caused thereby). The Superior Court of this state has reached the same conclusion. *DeLeo* v. *Orlando,* 29 Conn. Sup. 107, 273 A.2d 725 (1971).

We have held that a highway defect is "[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." *Hewison* v. *New Haven,* 34 Conn. 136, 142 (1867); see *Hickey* v. *Newtown,* 150 Conn. 514, 518, 192 A.2d 199 (1963). In *Hewison,* we distinguished such highway defects from those objects "which have no necessary connexion with the road bed, or the public travel thereon, and which may expose a person to danger, not as a traveler, but independent of the highway . . . ." *Hewison* v. *New Haven,* supra, 143. We explored this distinction more recently in *Comba* v. *Ridgefield,* 177 Conn. 268, 413 A.2d 859 (1979). In that case, rejecting the plaintiff's assertion that an overhanging tree limb, which subsequently fell on a traveling automobile, could be a "highway defect," we explained: "[I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair." Id., 271.

Unquestionably, a malfunctioning traffic light, although not a physical impediment at street level, is, as a matter of law, such a highway defect, or in the language of the statute, part of a "defective road." We need not consider, therefore, the impact § 52-557n would have in another case in which the statutory status of an accident's cause could not be established prior to trial.

The plaintiffs also advance a more novel proposition. They point out that § 13a-149 limits recovery to those accidents of which the municipality is the sole proximate cause and of which the municipality has been given statutory notice within ninety days. They insist that their alternative theories of liability may not be stricken until it has been determined at trial, not only that their cause of action arises from a highway defect, but also that the cause of action is viable: that is, that the defect was the sole proximate cause of the injury, and that they have fulfilled the statutory notice requirement. This argument raises the bizarre possibility that a plaintiff who fulfills the statutory notice requirement and whose injury is solely caused by a highway defect would be limited to his remedy under § 13a-149, while the plaintiff whose injuries were caused only tangentially by the highway defect, and who did not provide the municipality with notice, could maintain a full-fledged nuisance suit and recover intangible and consequential damages. We reject such an absurd reading of Practice Book § 137. See *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 667, 560 A.2d 975 (1989).

The judgment is affirmed.

In this opinion the other justices concurred.