[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' (NORWICH AND FELDMAN) MOTION TO STRIKE
In this case, the plaintiffs, Philomena Collins and her children Vernon Brown and Alyssa Collins, seek to recover damages for personal injuries based on their alleged exposure to lead-based paint while residing at 53 Pearl Street, Norwich, Connecticut, from August, 1992 to December, 1992. The defendants City of Norwich and Fred Feldman have moved to strike the fourth and fifth counts.[1]
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions
stated in the pleadings." (Emphasis in original.) Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996).
The pertinent facts are as follows: The defendant City of Norwich ["Norwich"], through its Department of Social Services, among others, administered the state's Rental Assistance Program (RAP), acting through its agent or employee, the defendant Fred Feldman ("Feldman"). (Count 1, incorporated in count 4, ¶¶ 6, 7, 8; count 4, ¶ 24). Feldman granted Philomena Collins a certificate of family participation in the RAP, and she subsequently identified the Pearl Street premises as a rental unit that would meet her family and financial requirements. (Count 1, ¶¶ 14, 15). Sometime between August 3, and August, 30, 1992, the residence was approved and Collins was authorized to move in and receive rental assistance. (Count 1, ¶ 16). RAP requires an inspection of a proposed housing unit before occupancy. (Count 4, ¶ 25) Feldman inspected the property in October, 1992, collecting paint chips from various locations. (Count 1, ¶ 17). In November 1992, Philomena Collins received notice that paint containing high levels of lead had been found on interior and exterior surfaces of the Pearl Street premises. (Count 1, ¶ 19). The lead paint was chipping, peeling, flaking, chalking and scaling from the walls and accumulating inside the residence. (Count 1, ¶ 20). CT Page 12204
The defendants' motion to strike sets forth three grounds: (1) General Statutes § 52-557n(b)(8) bars claims premised on factual allegations of negligent inspection. (2) The plaintiffs have failed to alleged compliance with General Statutes §7-465. (3) The fifth count fails to allege a breach of contract claim against Norwich.[2]
I. Section 52-557n(b)(8)
The defendants' argument that § 52-557n(b)(8)[3]
unambiguously bars claims alleging negligent inspection brought against a municipality, its officers, employees or agents applies to the fourth count only which sounds in negligence, not the fifth count, which sounds in contract. The defendants argue that the statute is clear and unambiguous, and that there are no exceptions to its explicit grant of immunity. The plaintiffs argue that the common law exceptions to the doctrine of governmental immunity apply and that whether § 52-557n(b)(8) bars their claim depends on whether the acts in issue are discretionary or ministerial or, if discretionary, whether they come under the identifiable victim/imminent harm exception.
The defendants have the better argument that §52-557n(b)(8) essentially confers "blanket immunity" which overrides any common law exceptions. Section 52-557n was enacted as part of Tort Reform in 1986. This section was intended both to codify and limit the common law rules concerning municipal liability for personal injury and property damage, although the legislative history suggests some "confusion with respect to precisely what part of the preexisting law was being codified, and what part was being limited." Sanzone v. Board of Police Commissioners,219 Conn. 179, 188, 592 A.2d 912 (1991). With respect to the enumerated circumstances in subsection (b), however, the legislative history is clear and reflects the legislature's intention to immunize municipalities and their employees from liability for the acts and omissions described by the subsection.[4] Thus, the only question here is whether the allegations of the fourth count fall within the purview of §52-557n(b)(8), as claimed.
The fourth count alleges that Feldman, acting as an agent or employee of Norwich, negligently administered the RAP in connection with the plaintiffs' occupancy of the Pearl Street premises. The essential allegations of the fourth count are: RAP CT Page 12205 requires an inspection of the property prior to occupancy (¶ 25); Feldman had a duty to conduct an inspection and determine that the residence was decent, safe and sanitary before granting RAP approval to Collins (¶ 26); and Feldman was negligent in that he allowed the plaintiffs to occupy the premises for two to three months before inspection and did not ensure that the apartment was safe, decent and sanitary; represented that the apartment was safe; and failed to promptly notify the plaintiffs of the presence of a hazard (¶ 27).
Read in the light most favorable to the plaintiffs, this count merely alleges that Feldman failed to make a timely inspection of the Pearl Street premises, that he made an inadequate inspection, and that he was negligent in notifying the plaintiffs of the presence of a hazard. These allegations fall squarely within the statutory exception to liability for "failure to make an inspection or making an inadequate or negligent inspection of any property." There are no factual allegations that support a conclusion that Feldman's acts or omissions were in reckless disregard of the plaintiffs' "health and safety under all the relevant circumstances," which is the only statutory exception to immunity. Conn. Gen. Stat. § 52-557n(b)(8). See, e.g., Steiger v. Town of Old Lyme, Superior Court, judicial district of New London, Docket No. 515733 (February 25, 1994, Austin, J.) (must allege recklessness to overcome the hurdle of § 52-557n(b)(8)); Fusco v. Town of Colchester, Superior Court, judicial district of New London at Norwich, Docket No. 98347 (September 13, 1993, Mihalakos, J.) (§ 52-557n(b)(8) grants immunity for negligent inspections; plaintiff must plead and prove recklessness to avoid bar). Accordingly, the defendants are correct that the fourth count must be stricken against them.
II. Section 7-465
The defendants have also moved to strike the fourth count on the ground that it fails to allege that notice was provided to the city as required by General Statutes § 7-465.[5] This statute provides for indemnification by municipalities for certain torts of their employees "under certain circumstances and after conformance with certain statutory requirements . . . ." Sanzonev. Board of Police Commissioners, supra, 219 Conn. at 193. The defendants maintain that, in order to assert a cause of action in negligence against a municipality based on an employee's negligence, the plaintiffs cannot avoid compliance with the statutory notice requirement by not explicitly seeking CT Page 12206 indemnification.
Unfortunately, the plaintiffs' complaint is confusing because it combines, in the fourth count, claims against Feldman and Norwich as well as others. As a result, it is impossible to conclude, viewing the allegations of the complaint most favorably to the plaintiffs, that the plaintiffs seek indemnification from Norwich pursuant to § 7-465.[6] This case closely resemblesRowe v. Godou, 209 Conn. 273, 550 A.2d 1073 (1988), in which the Supreme Court cautioned against concluding from a "confusing" complaint that it stated a cause of action for indemnification against a municipality triggering certain statutory requirements. Moreover, the plaintiffs are not required to sue exclusively under § 7-465, and not every action in which both the municipality and its employee are named defendants constitutes a suit brought under the statute. Fraser v. Henninger,173 Conn. 52, 56-57, 376 A.2d 406 (1977). Thus, the defendants cannot prevail on this ground.
III. The Fifth Count
Norwich has moved to strike the fifth count on the ground that the plaintiffs have not sufficiently alleged facts which support a breach of contract action. It also maintains that, regardless of how the plaintiffs chose to label the fifth count, the factual allegations constitute negligence only, for which it is immune from liability. While there is more than some merit to the latter argument,[7] it is not necessary to address it because Norwich is correct that the allegations of the fifth count are insufficient to state a cause of action for breach of contract.
The fifth count alleges that, upon information and belief, the state contracted with Norwich, and/or an entity called New Opportunities for Waterbury, Inc., to administer the RAP (¶ 24); those defendants then hired or appointed Feldman to carry out responsibilities under the contract with the state (¶ 25); and they breached the contract with the state by failing "to conduct a thorough, adequate and complete inspection" of the Pearl Street premises before allowing the plaintiffs to move in (¶ 26), as a result of which the minor plaintiffs suffered personal injuries due to lead poisoning (¶¶ 27, 28).
The fifth count suffers from a multitude of problems in its attempt to create a contractual relationship between the CT Page 12207 plaintiffs and Norwich premised on a state program providing rental assistance benefits to low-income families. First, on its face, it alleges, in conclusory terms, that the state entered into a contract with Norwich "and/or" another entity. No contract is appended to the complaint nor are the terms of the contract recited. There are simply no factual allegations from which it can be determined that there was an express or an implied contract between the state and Norwich.
Nonetheless, the plaintiffs maintain they are third-party beneficiaries of this phantom agreement. "In determining whether a person has a right of action as a third party beneficiary, [t]he ultimate test to be applied . . . is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." (Internal quotation marks omitted.) Grigerik v. Sharpe, 45 Conn. App. 775, 783-84, ___ A.2d ___ (1997).
There are no factual allegations in the fifth count that support a claim that Norwich intended to assume a direct obligation to the plaintiffs. "[A] third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party." (Citations omitted; emphasis added.) Stowe v.Smith, 184 Conn. 194, 196, 441 A.2d 81 (1981). Assuming, without deciding, that the state and Norwich actually entered into a contract, the plaintiffs were only possible members of the class RAP was intended to benefit. Without factual allegations to support an intention to benefit these particular plaintiffs, they cannot sustain their claimed status as third-party beneficiaries.
In an attempt to avoid this problem, the plaintiffs maintained at oral argument that the contract upon which they were relying was the RAP certificate of family participation granted to Philomena Collins by Feldman, (count 1, ¶¶ 13, 14), rather than the alleged "contract" with the state. However, the fifth count does not allege any breach of any agreement, either express or implied, with Norwich arising from the grant of this certificate. Nor can the court imply a contractual relationship in law from the allegations of the fifth count.
"A contract implied in law requires, as a foundation, that CT Page 12208 there be an obligation created by law that imposes a duty to perform." Therrien v. Safeguard Manufacturing Co., 180 Conn. 91,95, 429 A.2d 808 (1980). The complaint does not specify the factual basis upon which such a duty is to be implied. Id. Moreover, the fact that Philomena Collins was granted a certificate to participate in the RAP does not support an inference, as a matter of law, that Norwich thereby promised the plaintiffs that it would ensure the premises selected as a result of the issuance of the certificate were free of lead hazards. Neither General Statutes § 17b-812 nor the regulations implementing the RAP, Regs. Conn. State Agencies § 17b-812-1
et seq., can be read to create that specific contractual duty.
A "certificate of family participation" is issued as evidence that a family is eligible to participate in the RAP. The certificate is issued upon approval of eligibility, and allows the participant to locate a suitable rental unit, but does not relate to a particular unit. When the certificate is issued, the regulations require that the family be "informed of its responsibilities as tenants and the responsibilities of the landlord" and be given "information that will assist it in finding a suitable dwelling unit." Id., § 17b-812-5 (e). The family is responsible for finding a suitable housing unit, id. § 17b-812-7 (a), and, presumably, for conducting its own inspection of the premises for signs of any visible defects or problems.[8] Thus, the mere fact that Feldman granted Philomena Collins a certificate so that she could begin her search for housing neither created a specific obligation on the part of Norwich with respect to any particular housing unit nor imposed a specific duty on Norwich to inspect the Pearl Street premises for lead hazards, upon which the plaintiffs could rely.
Accordingly, the fifth count must be stricken because it fails to allege facts sufficient to support any cause of action based on a contractual theory of liability.
Conclusion
For the reasons stated in parts I and III above, the motion to strike is granted as to the named defendants Norwich and Feldman in the fourth count and as to the named defendant Norwich in the fifth count.
LINDA K. LAGER, JUDGE. CT Page 12209