[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO STRIKE
On October 12, 1993, the plaintiff, Wendy W. C. Weeks, filed a nine count complaint against the defendant, Office of Urban Affairs of the Hartford Roman Catholic Diocesan Corporation. The complaint alleges, on August 2, 1988, the plaintiff was hired as Director of the South Central Connecticut Elderly Nutrition Project, which was co-sponsored by the Office of Urban Affairs and the South Central Regional Council of Government. The Office of Urban Affairs was the grantee agency to receive federal and state funds granted to the South Central Connecticut Elderly Nutrition Project. The expenditure of these funds is monitored by the South Central Connecticut Area Agency on Aging, through the Connecticut State Department on Aging. The Executive Director of the Office of CT Page 9453 Urban Affairs instructed the plaintiff as to which specific figures were to be reported to the State Department on Aging to obtain federal and state grants. Before, during and after the plaintiff's term of employment, the Office of Urban Affairs did not submit appropriate and accurate figures. The Office of Urban Affairs was also responsible for reimbursing the South Central Connecticut Elderly Nutrition Project for its expenses in operating the Meals on Wheels program. The Office of Urban Affairs failed to do this. On June 11, 1992, the plaintiff gave an oral and written report to the South Central Connecticut Area Agency on Aging, The Office of Urban Affairs, The South Central Regional Council of Government and the board of the Elderly Nutrition Project, which "blew the whistle" on the Office of Urban Affairs for not submitting accurate figures and for not reimbursing the Elderly Nutrition Project. On July 1, 1992, the defendant's agents forced the plaintiff to take a one week leave of absence and stated that at the end of that time the plaintiff would have to resign or be fired. The plaintiff was given five minutes to clean out her desk despite requesting additional time. The plaintiff was monitored during this time by an agent of the defendant who then physically escorted the plaintiff out of the building under the observation of fellow employees. The plaintiff was terminated on July 9, 1992.
Count one alleges that these facts constitute wrongful discharge. Count two alleges that these facts constitute a violation of General Statutes § 31-51m. Count three alleges that the defendant's conduct was extreme and outrageous and an intentional infliction of emotional distress. Count five alleges that the defendant tortiously interfered with her right to continue in her position. Count seven alleges an estoppel because statements were made to the plaintiff that she would always have her job with the defendant, which induced her to rely on the fact that her employment was secure.
On October 28, 1993, the defendant filed a motion to strike counts 1, 2, 3, 5 and 7 on the ground of legal insufficiency to state a claim upon which relief can be granted, along with a supporting memorandum. On November 23, 1993, the plaintiff filed an objection to this motion, which mistakenly stated that a supporting memorandum was attached. On March 28, 1994, the plaintiff filed another objection to the defendant's motion to strike accompanied by a supporting memorandum.
"A motion to strike challenges the legal sufficiency of a pleading." Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). "The CT Page 9454 allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them; . . . and if facts provable under the allegations would support a defense or cause of action, the [motion to strike] must fail."Ferryman v. Groton, 212 Conn. 138, 142 (1989). "[F]acts . . . [are] construed in a manner most favorable to the pleader. . . . [A]ll well pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citations omitted.) Amodio v.Cunningham, 182 Conn. 80, 82-83 (1989). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis deleted.) Mingachos v. CBS, Inc., supra, 196 Conn. 108. "[I]n ruling on a motion to strike the trial court is limited to considering the grounds specified in the motion." Meredith v.Police Commission, 182 Conn. 138, 140 (1980).
Count One
The defendant contends that since a remedy for a wrongful discharge is provided by General Statutes § 31-51m, the plaintiff's right of action is limited to that statute, and, alternatively, if there is a common law cause of action for wrongful discharge the plaintiff must identify the public policy that has been violated. The plaintiff contends that the codification of wrongful discharge in whistle-blowing cases does not eliminate a common law cause of action.
"Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed." Lynn v. Haybuster Manufacturing, Inc.,226 Conn. 282, 290 (1993). "To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further." Sanzone v. Board of Police Commissioners, 219 Conn. 179,187 (1991). "[A] statute which creates a new remedy for a right already existing under the common law is generally directory only, and does not preclude the use of existing common law remedies."Krulikowski v. Policast Corporation, 153 Conn. 661, 667 (1966). "Interpreting a statute to impair an existing interest or to change radically existing law is appropriate only if the language of the legislature plainly and unambiguously reflects such an intent."Lynn v. Haybuster Manufacturing, Inc., supra, 226 Conn. 289.
General Statutes § 31-51m contains no language which expresses CT Page 9455 the intent of the legislature to make this statute an exclusive remedy for wrongful discharge. Cf., Gmyrek v. Lewis,6 Conn. L. Rptr. 857
(May 29, 1992, Austin, J.) (claim for wrongful discharge actionable under both General Statutes § 31-290a and common law).
The defendant also contends that count one should be stricken since it does not identify any specific violation of public policy. The plaintiff counters that count one alleges facts showing fraud, and that the plaintiff was discharged for revealing this fraud.
The Supreme Court has recognized "a common law cause of action in tort for discharges if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Internal quotation marks omitted.) Morris v. HartfordCourant Co., 200 Conn. 676, 679 (1986). "Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception." Id., 680. "[W]hen there is a relevant state statute we should not ignore the statement of public policy that it represents." Sheets v. Teddy'sFrosted Foods, Inc., 179 Conn. 471, 480 (1980). The basis for a public policy can be based on statute, constitution, or common law.Morris v. Hartford Courant Co., supra, 200 Conn. 680.
In count one the plaintiff alleges that she was discharged because she had revealed that the defendant was reporting inaccurate figures to state and federal agencies in order to receive grants. Given these facts "[t]he important public policy we identify is the one against fraud, which is deeply rooted in our common law . . . and in our criminal statutes." Schmidt v. YardneyElectric Corp., 4 Conn. App. 69, 74 (1985). A retaliatory dismissal also violates "public policy in favor of encouraging citizens to raise the `hue and cry' and report crimes to the authorities." (Internal quotation marks omitted.) Id., 75.
The plaintiff has alleged sufficient facts to establish a claim that her discharge was in violation of public policy.
Count Two
The defendant argues that count two of the complaint should be stricken since there are no allegations which state the specific laws the defendant violated which caused her to "blow the whistle." The plaintiff argues that General Statutes § 31-51m does not require that amount of specificity. CT Page 9456
"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature." UnitedIlluminating Co. v. Groppo, 220 Conn. 749, 755 (1992). "It is a well established rule of statutory construction that when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) Berry v. Loiseau, 223 Conn. 786, 830 (1992). "[T]he legislature is presumed to have intended a reasonable, just and constitutional result." Sanzone v. Board of PoliceCommissioners, supra, 219 Conn. 187.
General Statutes § 31-51m provides that "[n]o employer shall discharge . . . any employee because the employee . . . reports, verbally or in writing, a violation or suspected violation of any state orfederal law or regulation or any municipal ordinance or regulation
to a public body." (Emphasis added.) In count two, ¶ 24, the plaintiff alleges that she reported, verbally and in writing suspected violations of state and federal law to a public body. The statute does not require specificity on the part of the employee, only that the employee "suspect" that there is a violation of law. One may reasonably "suspect" a violation of law without certainty of which law, or the exact provisions of that law. The plaintiff alleges that the defendant submitted inaccurate figures for state and federal grants, and further that the plaintiff reported the defendant's action to the agency responsible for monitoring these grants. This appears to comport with the plain intent of the legislature in General Statutes § 31-51m.
Count Three
The defendant contends that the facts as alleged by the plaintiff in count three are insufficient as a matter of law to be construed as extreme or outrageous conduct, and thus are legally insufficient to state a claim of intentional infliction of emotional distress. The plaintiff argues that the facts alleged are sufficient to support such a claim.
Four elements must be established to state a claim of intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; CT Page 9457 and (4) that the emotional distress sustained by the plaintiff was severe." (Citations omitted.) DeLaurentis v. New Haven, 220 Conn. 225,266-67 (1991). "Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. . . . Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice." (Citation omitted.) Brown v. Ellis, 40 Conn. Sup. 165, 167 (1984, F. McDonald, J.). "The question of whether an actor's conduct is extreme and outrageous to impose liability is a question of fact."Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 62 (1984, Cioffe, J.); Brown v. Ellis, supra, 40 Conn. Sup. 167-68. However, the superior court has also stated that "[w]hether the defendant's conduct and resulting distress are sufficient to satisfy either of these elements is a question in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 18
(1991, Berdon, J.). "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."Mellaly v. Eastman Kodak Co., supra, 42 Conn. Sup. 20.
The plaintiff's allegations of wrongful discharge can be viewed as an abuse of authority by the defendant which may or may not rise to the level of extreme or outrageous conduct. Whether it is outrageous conduct is a question upon which "reasonable minds may differ", and thus is a question of fact. Since there is a question of fact it is not appropriately decided on a motion to strike. Hughes v. National Car Rental Systems, Inc., 22 Conn. App. 586,590 (1990).
Count Five
The defendant argues that count five should be stricken because a party to a contract cannot tortiously interfere with that contract. The plaintiff responds that the case law is not binding on this court, and that this count sounds in tortious interference in financial expectancies and, as such, is broader than one based on contract.
"The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendant's knowledge of that relationship, the intent to interfere with it and the consequent actual loss suffered by the plaintiff." Beizer v.Goepfert, 28 Conn. App. 693, 701 (1992). The Supreme Court has not CT Page 9458 decided whether a claim for tortious interference can be made by a party to a contract. The Appellate Court, however, has stated in dicta, that "[o]rdinarily, such a suit lies for tortious interference with a contract by a third party. . . . In addition, the general rule is that the agent may not be charged with having interfered with a contract of the agent's principal." Selby v.Pelletier, 1 Conn. App. 320, 327 n. 4 (1984). The general rule applied in the superior court is that "there can be no tortious interference of a contract by someone who is directly or indirectly a party to the contract." Baum v. United Cable Television,2 Conn. L. Rptr. 515 (July 20, 1992, Dunn, J.); Nemeth v. Gun Rack, LTD, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0601353 (September 21, 1992, Leheny, J.); Lenart v. CityClerk of Derby, 2 Conn. L. Rptr. 630, 631 (October 24, 1990, Fuller, J.); See Multi-Service Contractors Inc. v. Vernon,193 Conn. 446, 451 (1984). Furthermore, "[a]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable for breaching its own contract." Murray v. Bridgeport Hospital,40 Conn. Sup. 56, 60-61 (1984, Cioffe, J.). "There is, of course, no material distinction between interference with contractual relations and interference with business with respect to the requirement that the tortious conduct be committed by a third party outside of the contractual relationship." D'Aquila v. EnvironmentalSystems Products, Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 0455259 (November 18, 1993, Berger, J.).
The plaintiff alleges, in count five, ¶ 24, that agents for the defendant maliciously interfered with her "right to continue in her position." The plaintiff argues that this is an interference with a "financial expectancy," but the gravamen is tortious interference with an at-will contract of employment. Whether the plaintiff calls it a contract or a financial expectancy, the elements required remain the same. While superior court rulings are not binding, the plaintiff has provided no contrary authority. Accordingly, this court concurs with those cited; defendant's agents were unable, as a matter of law, to tortiously interfere with a contract to which, as agents, they were parties.
Count Seven
The defendant contends that count seven of the complaint CT Page 9459 should be stricken on the ground of legal insufficiency since the plaintiff has not alleged the existence of a clear and definite promise. The plaintiff argues that the allegations allege facts sufficient to support a claim of promissory estoppel.
Promissory estoppel is appropriate where
 a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all.
(Internal quotation marks omitted.) D'Ulisse v. Board of Directorsof Notre Dame High School, 202 Conn. 206, 213 (1987). A clear and definite promise manifests a "present intention . . . to undertake immediate contractual obligations." Id., 214-15.
The plaintiff has alleged, in count seven, ¶ 23, that "statements were made to her that she would always have her job with the Office of Urban Affairs." The plaintiff further alleges that this promise of employment caused reasonable reliance on her part. The plaintiff's allegations do not manifest any intention on the part of the defendant to undertake contractual obligations. "Furthermore, none of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits."D'Ulisse v. Board of Directors of Notre Dame High School, supra,202 Conn. 215. Allegations that promises were made which induced reliance are merely conclusions of law and legally insufficient to state a claim. Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). The plaintiff has alleged no facts demonstrating the existence of a clear and definite promise.
For the reasons stated herein, the defendant's motion to CT Page 9460 strike is denied as to counts one, two and three, and granted as to counts five and seven.
Robert A. Martin, Judge