[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by one Evelyn Millan against the City of Meriden claiming damages for personal injuries sustained on June 19, 1993 when she stepped in a hole on Maple Street in Meriden, Connecticut.
The court finds that on said June 19, 1993 in the late evening at approximately 7:30 p. m., the plaintiff was alighting from the driver's seat of her van-type automobile on Maple Street in Meriden, Connecticut when she stepped in a hole in the pavement, thereby falling to the ground. She sustained an acute sprain of the left ankle. She was taken from the scene to Veterans Memorial Medical Center, a hospital in Meriden. She had severe lateral swelling of the ankle. No fractures were noted. She was treated with an ace wrap and was discharged from CT Page 1970 the hospital, by use of crutches prescribed and furnished at the hospital.
The ankle did not progress to rapid healing. On July 1, 1993 she came under the care of Dr. Santo Sampina, a Chiropractic Physician. She treated with Dr. Sampino from July 1, 1993 to July 30, 1993. At that time she still had continuing pain and tenderness of the left ankle.
The plaintiff had also had treatment at the Waterbury Hospital Health Center, which is in her home town. First on June 22, 1993, three days after the accident, and thereafter in July, August and September, 1993, with apparently little significant permanent improvement. On March 16, 1994 she returned to Dr. Sampina. Her condition had become chronic. By June 20, 1994 Dr. Sampino concluded that she had achieved maximum medical improvement, and he determined that she has a 10% permanent impairment of the left ankle. From time to time the pain becomes more severe, causing her to seek the help of Dr. Sampino, which provides some temporary relief. Her last visit was on September 5, 1995. There is no prediction as to future treatment.
Mrs. Millan is a stocky lady who is 5'3" tall and weighed 225 lbs. when she first saw Dr. Sampino in July, 1993. She has made an effort to lose weight, though not as successful as she would hope for. She now weighs 210 lbs. Strenuous exercise, such as jogging for that purpose, is not available to her because of her ankle. She is now 35 years old and cares for her four children, ages twelve to sixteen.
The hole in the road was approximately ten inches in diameter and three inches deep, per the police report of the Meriden Police Department, as was viewed by Officer Tony Wazniecki who investigated the incident in the evening of its occurrence. This basically corresponds to the description given by the plaintiff's thirteen year old daughter Melinda, describing it as a big hole. She heard her mother call her from a lying down position on the pavement and came to assist.
The dimensions basically correspond with the description given by Herado Collazo, who observed the hole to be a foot in diameter and 3-1/2 inches deep. Mr. Herado Collazo came to the scene and helped to take Ms. Millan to the hospital. CT Page 1971
Melinda testified that it looked like an old hole. Mr. Collazo testified that there were pieces like little rocks, loose pieces of the black stuff in the hole, and that the pieces looked old. Mrs. Millan testified that there were like rocks in the hole.
Officer Wazniecki testified that there was loose asphalt in the hole. He had seen a utility company working in the road seven to fourteen days prior to this incident. His statement in the police report relates that the cut appears to be filled with a temporary cold patch which was beginning to break up. He testified that it would have started to degrade within the preceding seven to fourteen days. Richard Graham, Deputy Director of Public Works for the City of Meriden testified. He has experience and knowledge concerning the subject of holes in street asphalt pavement. He testified that if there had been pieces of asphalt around the perimeter of the hole, that would indicate a new situation, a newly occurred hole. None of the witnesses who actually viewed the hole, including Officer Wazniecki, testified as to seeing any pieces around the perimeter of or in the vicinity of the hole.
The court concludes that this hole had been in the road for a significant period of time, at least a number of days, when the plaintiff stepped into the hole.
Additional facts will be set forth as are appropriate in determining the issues of this case.
 I.
The defendant claims that the plaintiff has failed to prove that Maple Street is a public highway for which the defendant Town of Meriden is responsible to keep in repair.
The plaintiff alleges in the complaint, paragraph 1, that . . ."it was the duty of this municipality to build, repair and maintain certain highways, roads, streets and bridges within its boundaries, including Maple Street."
The defendant answers:
 "1. Paragraph 1 is admitted to the extent that the responsibility exists where the road in question is in fact a formally accepted city street." CT Page 1972
Section 162 of the Practice Book is captioned as follows:
"§ 162 The Answer — Pleadings to be Direct and Specific."
The text of Practice Book § 162 provides:
 "Express admissions and denials must be direct, precise and specific, and not argumentative, hypothetical
or in the alternative. . . .Admissions or denials of allegations identified only by a summary or generalization thereof. . .are improper."
The text of this practice book section specifically requires that what is to be admitted or denied is to be specifically admitted or denied, reciting that portion which is admitted, and denying (or, by practice, "leaving to proof") that portion which is not admitted.
The answer to paragraph 1 utterly fails to comply with § 162 of the Practice Book. The natural effect of such an answer is to lull the adverse pleader into believing that such an answer admits the facts pleaded. Though the pleading may be coy, its effect is to avoid properly framing and alerting the adverse pleader as to the presence of a potential issue. This is precisely contrary to the purpose sought to be achieved by the rules of pleading.
The evidence in this case leads the court to conclude that Maple Street is a public highway in the Town of Meriden, the maintenance of which is the responsibility of the City of Meriden to maintain. The Police report lists Maple Street as "street no. 0037". Under the caption "Street Name and Type" the only words appearing are "Maple Street". There is adequate room in the space provided on the form to add "private road", "state highway's or the like. No such designation is set forth in the space provided on the police report.
After seeing Mrs. Millan at the hospital, the officer went immediately to the locus of the accident, the paved road bordering 37 Maple St. Police officers have no duty whatsoever and arguably no authority, to investigate fall down accidents of this nature which occur on private property, private roads, or state property. Further, the officer testified that he had viewed the construction activity on the road within the seven to CT Page 1973 fourteen days prior to the accident. Obviously this observation would have been made during his patrol duties. Municipal police officers have no duty or obligation, and arguably no authority, to patrol private roads or state highways. Further, the officer's report volunteers a written opinion as to whether the hole "created a public hazard which required an immediate response." Public hazards concern public roads.
The City of Meriden Deputy Director of Public Works, Richard Graham, when testifying at the request of and for the defendant, gave not one word of testimony to take issue with the compelling inference that Maple Street was a town highway under the control of the defendant town.
The court finds that the plaintiff has proved by a preponderance of the evidence that Maple Street at the location of this accident was a road for which the City of Meriden was bound to keep in repair and was subject to the provisions of General Statutes § 13a-194.
 II.
The defendant contends that the plaintiff failed to show that the hole in the road was a defect.
"We have held that a highway defect is `any object in, upon or near the traveled path which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result. . ." Sanzone v. Board of Police Commissioners,219 Conn. 179, 202 (1991); Sullivan v. Norwalk,28 Conn. App. 449, 553 (1992).
"Whether a highway is defective may involve issues of fact, but whether the facts allege if true, amount to a highway defect according to the statute is a question of law. . ." Sullivan v.Norwalk, supra, p. 453; Sanzone v. Board of Police Commissioners,
supra, p. 201.
There is no question whatsoever that a hole in the pavement which is at least ten inches in diameter and at least three inches deep is a defect in the highway "which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon. . ." Sullivan v. Norwalk, supra, p. 453. A person stepping into a hole of this nature is almost certain to CT Page 1974 sustain a loss of balance or a twisting of the foot with the likely consequence of sustaining personal injury.
There is no rule of law or custom or practice which prohibits or discourages pedestrian use of urban roads. Although pedestrian use of roads may be limited in certain circumstances, such as on interstate highways, or between marked crosswalks (General Statutes § 14-300b) no such circumstances exist in this case. To the contrary it must be anticipated that persons are going to use urban streets for specific pedestrian purposes. General Statutes § 14-300b in fact acknowledges the custom and practice of pedestrian use.
It must be anticipated that persons are going to use the road for the purpose of entrance to and exit from automobiles. Otherwise there would be no visiting of friends, drop off of children, delivery of goods, or even vehicular delivery of mail. The law does not confine the use of city streets to only vehicular non-pedestrian travel.
The defendant contends that the plaintiff unlawfully stopped her vehicle in a no-parking area. There is no information to indicate that the plaintiff did park or intended to park her vehicle at that location. To the contrary the plaintiff stopped the vehicle to allow her children to depart the vehicle to attend a father's day party at the home of a relative on Maple St. The only reason the plaintiff got out of the vehicle, before proceeding on, was to close the passenger side door which the children, in their excitement, had left open. There were not any "no stopping" or "no standing" signs which would have admonished against dropping off of the children, or getting out to close an open door on the passenger side of the van. The court determines that the presence of a no-parking sign did not legally prohibit the plaintiff from stopping the vehicle in an area which it is argued was prohibited to her, or would legally prohibit her from exiting the van to close the door left open by the children. The defendant should have anticipated that persons would stop their vehicles, and exit upon the pavement for brief periods of time.
 III.
Whether the defendant had constructive notice and had reasonable time to remedy this defect is always an issue in cases of this nature. CT Page 1975
As aforesaid, the town had at very least several days of constructive notice of the existence of this defect. The defect existed for at least several days prior to this incident.
Richard Graham testified that the town relies upon several sources to alert it to highway defects. One source is the report of such defects by citizens. Another source is the police department, who from time to time report highway defects. But there is no standard operating procedure nor any instructions given to the police department as to what type of conditions are to be reported to the Public Works Department.
There appears to be no schedule or procedure for inspection other than a nebulous statement that the Public Works Department also relies upon "their own road staff", whatever that may mean. The lack of significant training or coordination with the police department is best illustrated by the police officer's report that this hole, ten inches in diameter and at least three inches deep, is reported as "Neither the cut itself nor the hole created a public hazard that required an immediate response".
The court concludes that this hole in the road was a hazard and a defect, that it was an obstruction and hinderance [hindrance] in the public highway, that it existed for an adequate period of time to have been remedied, and that the defendant had constructive notice of said defect. It is noted that this is a summertime incident and does not relate to circumstances in late winter whereby potholes developed by severe winter conditions may temporarily overwhelm the reasonable capacity of town road maintenance crews to deal with road defects.
 IV.
The defendant contends that the plaintiff failed to prove that she was in the exercise of due care.
The defendant's position on this matter appears to be that if the defect could have been discovered by an inspection by the defendant, then it should have been observed by the plaintiff. Although the "logic" of this proposition may seem attractive, yet these terms are not synonymous at law or in common parlance. The term inspect does in fact have a different connotation, a different degree of observation, than that of reasonable lookout. Contrary to the defendant's position, the plaintiff
CT Page 1976 did not, at law, have a duty to "inspect".
From a factual standpoint, the court concludes that the plaintiff was in the exercise of due care in exiting the vehicle. The defect existed in very close proximity to the driver's door, less than seven feet from the curb. The sight angle of a driver in exiting the door of this van, or any other vehicle, is not 90° degrees. Although such movement is continuous, yet the feet go first and the head follows. The court knows of no one who projects their head out of a vehicle preliminary to exiting a vehicle. The exiting of a vehicle is a complicated maneuver which requires attention to be certain that body parts clear the metal and glass parts of the vehicle. It is highly unlikely that a reasonable person, using reasonable care, would pre-view the exact spot where the foot would land when exiting the vehicle.
The court can discern no unusual or careless activity of the plaintiff in exiting this vehicle or in failing to perceive the said defect.
The defendant contends that the plaintiff must have seen this hole as she approached the drop off point for the children. Or, if she does not remember seeing it, then it could not have been much of a hole. This is an exercise in logic which does not have a realistic basis in human experience.
First, the attention of a driver is naturally directed to the curb when dropping off passengers. Otherwise the car will hit the curb. The defect was not at the curb. It was a distance removed from the curb. Second, even if it were within the outside perimeter of the sight line, and would speculatively have been capable of the plaintiff's observation, yet it posed no danger to the children, who were to exit from the passenger side. Nor to the plaintiff, who could not contemplate that she would be exiting the car in the vicinity of the hole. There would be no reason, in the rational normal working of the mind, to place a then immaterial non threatening condition into apprehensive memory. The circumstances herein are not similar to that of a pedestrian walking along and stepping into a hole which is in the direct line of his or her walking path. The court determines that the plaintiff was in the exercise of due care when exiting the vehicle.
V. CT Page 1977
The matter of mitigation of damages.
The defendant claims in the brief that the plaintiff has failed to mitigate damages because she has failed to lose weight.
The defendant has not pleaded mitigation of damages. Further, "the burden of proving that the plaintiff failed to mitigate damages in a negligence case is on the defendant".Mura v. Pulieri, 40 Conn. App. 183, 187 (1996).
Regardless of who has the burden of proof, the court finds, from the evidence, that the plaintiff has made a fair and reasonable effort to mitigate damages. She has lost fifteen pounds since the initial visit to her doctor. The court determines that her efforts to lose weight are reasonable efforts, bearing in mind the limitations of her physical disability as concerns strenuous physical exercise.
The court finds for the plaintiff. The court determines economic damages to be in the amount of four thousand five hundred and forty-eight dollars and thirty-three cents $4,548.33. The court finds non-economic damages to be in the amount of fourteen thousand dollars — $14,000.
The parties are to contact the court to schedule a hearing to determine collateral sources per General Statutes § 52-225a.
L. PAUL SULLIVAN, J.