THE FIDELITY BANK, EXECUTOR (ESTATE OF THOMAS F. BRIGHT) *v.* STATE OF CONNECTICUT ET AL.

THE FIDELITY BANK, EXECUTOR (ESTATE OF MARGARET B. BRIGHT) *v.* STATE OF CONNECTICUT ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued February 6—decision released March 26, 1974

*William A. Rabinowitz,* and *Arnold E. Cohen* of the Pennsylvania bar, with whom, on the brief, were *James E. Beasley* and *Samuel Diamond* of the Pennsylvania bar, for the appellant (plaintiff) in each case.

*Brian E. O'Neill,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Richard F. Webb,* assistant attorney general, for the appellees (defendants) in each case.

PER CURIAM. These two cases were consolidated for appeal to this court. The plaintiff in each case is a Pennsylvania corporation serving as executor under the wills of Thomas F. and Margaret B. Bright, husband and wife, who had resided in Pennsylvania. As such executor, the plaintiff brought companion actions against the state of Connecticut, the department of environmental protection, the commissioner of environmental protection, and the public works commission, the commissioner of public works and two corporations, Griswold Air Service, Inc., and Griswold Airport, Inc. In each case it is alleged that the plaintiff's decedent was killed when a private aircraft piloted by Thomas and in which Margaret was a passenger crashed into a water storage tower located at Hammonasset

Beach State Park in Madison. Negligence on the part of each defendant and, in addition, the maintenance of a nuisance by the state of Connecticut, the department of public works or the park and forest commission are alleged.

The attorney general appeared on behalf of the state, the defendant department and commission and the defendant commissioners, all of whom demurred to the complaints on the ground that the actions are not maintainable since the state is immune from suit unless authorized by law, and it does not appear that the suits were sanctioned by statute or by special act of the legislature nor authorized by the state commission on claims. The court sustained the demurrers and, the plaintiff failing in each case to plead further, judgment was rendered for those defendants represented by the attorney general.

On its appeals, the plaintiff seeks to have this court abrogate by judicial fiat the long-established, common-law rule that the state is immune from suit unless by appropriate legislative action it has consented to be sued. See *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290, and the many cases cited. As this court observed in *Murphy* v. *Ives,* 151 Conn. 259, 262–63, 196 A.2d 596: "[T]he state's sovereign right not to be sued without its consent is 'not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms or by force of necessary implication,' *State* v. *Kilburn,* . . . [81 Conn. 9, 11, 69 A. 1028]."

Not only has Connecticut long recognized the common-law principle of the state's immunity from suit without its consent, but it has expressly provided by constitutional provision and statutory

enactment for the adjudication of claims against the state. The constitution of Connecticut, article eleventh, § 4, expressly provides: "Claims against the state shall be resolved in such manner as may be provided by law." This constitutional provision was first adopted on November 29, 1958. The next following session of the General Assembly "provided by law" for the resolution of such claims by the adoption of Public Acts 1959, No. 685, entitled "An act concerning the hearing and determination of claims against the state." This 1959 act, with some amendments not material to the decision on these appeals, is now included in General Statutes, chapter 53 (§§ 4-141—4-165), entitled "Claims against the state." By this legislation, the General Assembly created a special tribunal known as the commission on claims with jurisdiction to approve immediate payment of just claims against the state not exceeding $2500 (§ 4-158) and, after hearing, to make recommendations to the General Assembly for the payment or rejection of claims for amounts exceeding that sum (§ 4-159). Section 4-160, entitled "Authorization of actions against the state," also permits the commission to authorize suit against the state on any claim for more than $2500 "which, in the opinion of the commission, presents an issue of law or fact under which the state, were it a private person, could be liable." Section 4-160 further provides that "[t]he state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances."

Instead of presenting its claims against the state to the commission on claims as permitted by legislative action of the General Assembly, the plaintiff seeks to have this court abrogate by judicial decision the long-established principle of sovereign immunity. This we decline to do. We affirm what this court said in *Bergner* v. *State,* 144 Conn. 282, 286, 130 A.2d 293: "The question whether the principles of governmental immunity from suit and liability can best serve this and succeeding generations has become, by force of the long and firm establishment of these principles as precedent, a matter for legislative, not judicial, determination."

There is no error.