DIANE COMBA ET AL. *v.* TOWN OF RIDGEFIELD ET AL.

LOISELLE, BOGDANSKI, LONGO, PETERS and PARSKEY, Js.

Argued January 4—decision released April 10, 1979

*Robert R. Sheldon,* with whom, on the brief, was *T. Paul Tremont,* for the appellants (plaintiffs).

*Bruce L. Levin,* with whom, on the brief, was *Arnold J. Bai,* for the appellee (named defendant).

*George L. Holmes, Jr.,* with whom, on the brief, was *Richard F. Oburchay,* for the appellee (defendant James F. Shugrue, commissioner of transportation).

*Carl R. Ajello,* attorney general, and *F. D. Neusner,* assistant attorney general, filed a supplemental brief on behalf of the appellee (defendant James F. Shugrue, commissioner of transportation).

Loiselle, J. This action was brought against the defendant town of Ridgefield and the commissioner of transportation for the state of Connecticut to recover for personal injuries caused by an overhanging tree limb that fell on the named plaintiff while she was a passenger in a vehicle using a public highway. Demurrers to the complaint were sustained in part and judgment was rendered as to those counts where demurrers were sustained. The plaintiffs have appealed.

The complaint alleged in part as follows: The plaintiff Diane Comba was a passenger in a motor vehicle owned and operated by her father, the plaintiff Joseph J. Comba. The vehicle was proceeding southerly on a public highway in the town of Ridgefield. Located within the limits of the highway was a sugar maple tree. The crotch area of the tree was rotten and too weak to support a large limb which extended from it out over the traveled portion of the highway. As the Comba vehicle approached the area where the tree was located, the tree limb broke off and fell onto the vehicle, striking the plaintiff Diane Comba and injuring her severely.

Four counts of the complaint are addressed to the alleged liability of the defendants under General Statutes §§ 13a-149 and 13a-144. Those statutes impose liability upon municipalities and the state respectively for injuries or damages caused "by means of a defective road." There is no substantial difference in the duties imposed by those stat-

utes, and, for purposes of discussion in this appeal, the duties are deemed to be identical. *Hay* v. *Hill,* 137 Conn. 285, 289, 76 A.2d 924 (1950). It is the claim of the plaintiffs that the limb of the tree which was rotted at the crotch and which hung over the traveled portion of the highway was a "defect" in the highway within the meaning of the above statutes.

A defect in a highway that would give rise to liability under either General Statutes §§ 13a-144 or 13a-149 has been generally defined as "[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result." *Hewison* v. *New Haven,* 34 Conn. 136, 142 (1867). This court in *Hewison* recognized that the defect need not be a part of the roadbed itself. It gave, among other examples, tree limbs overhanging the roadway near the ground which necessarily obstructed the use of the road. On the other hand, the case pointed out that those objects which have no necessary connection with the roadbed or public travel, which expose a person to danger, not as a traveler, but independent of the highway, do not ordinarily render the road defective. This court listed trees, walls of buildings standing beside the road, and objects suspended over the highway which are so high as to be entirely out of the way of travelers, as examples of the latter. It further pointed out that a person could be injured by them, but the use of the highway, as such, does not necessarily bring about the injury. Such objects may be a nuisance that the government unit may have an obligation to abate, but they are not defects in the highway.

In *Dyer* v. *Danbury,* 85 Conn. 128, 81 A.2d 958 (1911), an action was brought against the city and town to recover damages for personal injuries caused by a falling limb of a tree which overhung the sidewalk. The defendants' demurrers, claiming that overhanging limbs of trees were not a "defect" under the statute, were sustained. It was held that the overhanging limb did not obstruct travel on the highway and that the municipality was not bound to remove it as a part of its duty to maintain the highway within its limits. See also *Riccio* v. *Plainville,* 106 Conn. 61, 63, 136 A. 872 (1927).

The complaint in *Dyer* did not allege an obstruction or a hindrance to travel on the highway, but claimed that the overhanging limb in its rotted condition was the defect or hindrance. The fact that the limb was not a part of the roadbed, or not within the traveled portion of the highway, was not controlling. See *Hay* v. *Hill,* supra, 289; *Parker* v. *Hartford,* 122 Conn. 500, 502, 190 A. 866 (1937). In *Dyer,* however, this court reasoned that if there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair. *Udkin* v. *New Haven,* 80 Conn. 291, 297, 68 A. 253 (1907).

The condition alleged in this case did not obstruct, hinder or operate as a menace to travel. It was a condition that could cause injury, but that injury could result even to one who was not a traveler on the highway. A person could be injured by the limb; but the use of the highway, as such, would not necessarily have led to the injury. *Hewison* v. *New*

*Haven,* supra, 143. Thus, we find that the trial court in the present case was not in error in sustaining the demurrers.

Two counts of the complaint allege that the state was negligent in its maintenance of the highway. The demurrer to those counts on the basis of sovereign immunity was sustained by the trial court.

The plaintiffs seek to abolish the doctrine of sovereign immunity by judicial fiat and argue that the soundness and validity of this rule is seriously debatable. It has been a long-established common-law rule that the state is immune from suit unless by appropriate legislative action it has consented to be sued. *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290 (1972), and the many cases cited therein. In 1974, a strong appeal was made that the doctrine be abrogated in *Fidelity Bank* v. *State,* 166 Conn. 251, 253, 348 A.2d 633 (1974). In that appeal, this court affirmed (p. 255) what was said in *Bergner* v. *State,* 144 Conn. 282, 286, 130 A.2d 293 (1957): "The question whether the principles of governmental immunity from suit and liability can best serve this and succeeding generations has become, by force of the long and firm establishment of these principles as precedent, a matter for legislative, not judicial, determination." The opinion pointed out that the General Assembly did concern itself with the doctrine by expressly providing by constitutional provision and statutory enactment for the adjudication of claims against the state. Conn. Const., art. 11, § 4; General Statutes §§ 4-141-4-165. Those enactments make clear that the legislature has not stood idly by, but has actively agreed with the pronouncements of this court that the doctrine is better left to the legislature.

Again, in *Textron, Inc.* v. *Wood,* 167 Conn. 334, 339, 355 A.2d 307 (1974), this court reiterated its adherence to the long-established common-law rule that the state is immune from suit unless by legislative action it has consented to be sued. In this appeal, the plaintiffs have presented no cogent reason for this court to disturb the doctrine of sovereign immunity as it exists in this state. The plaintiffs were not completely prevented from an adjudication of their claim against the state, as chapter 53 of the General Statutes allows claims such as theirs to be determined.

There is no error.

In this opinion the other judges concurred.