[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE MOTIONS FOR SUMMARY JUDGMENT #178 #179
This is a wrongful death action brought on behalf of the Estate of Kevin Elliot (Elliot) against the City of Waterbury (Waterbury) and the Town of Morris (Morris) their agents, servants and employees. On November 12, 1992, Kevin Elliot was jogging on Pitch Road, an unpaved road in Morris when he was unintentionally shot and killed by one Robert Cook, a person who was hunting in the watershed area adjacent to the road and owned by Waterbury. Pitch Road was a Morris Town Road, unpaved with a gravel surface, used as access to the Waterbury Reservoir from State 109. The road was plowed by Morris during large storms to CT Page 3196 the dam area so that Waterbury workers could daily read instruments at the reservoir. Waterbury employees normally felled limbs and branches from the roadway. Pitch Road was also used by walkers and joggers, hunters used it as well to gain access to the watershed area north of Route 109. Waterbury allowed hunting on it's watershed property and Robert Cook was hunting on the day this incident occurred.
Both the City of Waterbury and the Town of Morris have filed Motions for Summary Judgment. Waterbury, in it's motion #179, seeks summary judgment on counts 1, 2, 3, 4, and 8 and Morris, in it's motion #178, seeks the same relief as to counts 5, 6, and 7. The court will consider separately the claims of each of these defendants.
A. THE CITY OF WATERBURY
In count one, Elliot alleges that the City of Waterbury and its agents, servants and employees acted negligently by allowing hunting in the watershed area. The second count is an indemnification claim under General Statutes § 7-465, which provides for indemnification of municipal employees for damages they may be obligated to pay for such negligence. Count three is a nuisance claim against the City of Waterbury and its agents, servants and employees. In the count four, Elliot alleges that the City of Waterbury and its employees were reckless in failing to take appropriate steps to alleviate the inherent danger at the watershed property. In the eighth count, Elliot alleges that the City of Waterbury and its employees and its agents willfully or maliciously failed to guard or warn against the dangerous condition, use or activity of hunting.
This motion for summary judgment has been made by Waterbury, its officers and employees as to all counts.[1] Waterbury argues that all claims are barred by the Recreational Use Statute, General Statutes §§ 52-557f, et. seq. Waterbury also claims that defendants Carroll and Leisring have no responsibility for control, maintenance, or operation of the watershed property, nor any responsibility for the program allowing hunting on watershed property, and therefore, judgment should be granted in their favor. Waterbury has moved for summary judgment on the fourth and eighth counts, on the ground that Elliot has made no allegation of fact which could establish reckless or intentional misconduct. Waterbury also claims that General Statutes §§ 52-557n(b)(1) and 52-557n(b)(6) provide CT Page 3197 statutory immunity bar Elliot's claims.
Summary judgment is available when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Water and Way Properties v. ColtMfg. Co., 230 Conn. 660, 664, 646 A.2d 143 (1994). The purpose of summary judgment is to eliminate the delay and expense of litigating an issue when there is no genuine issue to be tried.Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). The moving party bears the burden of establishing the nonexistence of any material fact, . . . and the trial court must view the evidence before it in the light most favorable to the nonmoving party. Honan v. Greene, 37 Conn. App. 137, 139-140, 655 A.2d 274
(1995).
An opposing party cannot simply claim that a disputed issue exists. Merely asserting that material facts exist is insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented by the court in support of a motion for summary judgment. Water and WayProperties v. Colt Manufacturing, Inc., supra, 230 Conn. 665.
 I.
In Counts One and Two of the complaint, the plaintiff alleges that:
 20. While jogging on Pitch Road as hereinabove described, the plaintiff's decedent, KEVIN ELLIOTT, was suddenly and without warning struck by a 12-gauge shotgun bullet which was discharged by a deer hunter who was then and there hunting on Waterbury Watershed property with the general permission and consent of the Town of Waterbury, its agents, servants and employees.
 21. The shotgun bullet as hereinabove described entered KEVIN ELLIOTT's neck on the left side at a point or place approximately seven inches from the top of his head. Thereafter the bullet tracked from left to right striking the carotid artery and doing severe damage to several cervical vertebrae. The bullet tracked from the front to back slightly downward, prior to exiting Mr. Elliott's right CT Page 3198 shoulder.
 22. The injuries and damages hereinafter more specifically set forth were caused by the negligence and carelessness of the Defendant, CITY OF WATERBURY, its agent, servants, or employees in one or more of the following respects IN THAT:
 a. they knew or should have known that allowing hunting on Waterbury Watershed property was not reasonably safe and posed a risk of injury to members of the general public, including the plaintiff's decedent, Kevin Elliott;
 b. they failed to provide adequate warning signs on Waterbury Watershed property adjacent to Pitch Road to alert members of the general public using Pitch Road that hunting was occurring on the property;
 c. they failed to adequately supervise and inspect hunting on Waterbury Watershed property;
 d. they allowed hunting in an area of Waterbury Watershed property which was in close proximity to a public roadway when they knew or should have known it was unsafe and unreasonable not to do so;
 e. they allowed hunting in an area of Waterbury Watershed property which, because of the location of Pitch Road and Morris Reservoir, was inadequate in size to allow hunting;
 f. they failed to restrict hunting in the area from which the subject bullet was fired although they knew or should have known that it was unsafe and unreasonable not to do so;
 g. they failed to obtain the required permit from the State of Connecticut, Department of Health Services, to allow hunting on Waterbury Watershed property contrary to Connecticut General Statutes made and provided and when they knew or should have known it was unsafe and unreasonable not to do so;
CT Page 3199
 h. they failed to investigate and appreciate complaints, both oral and written, from members of the general public concerning danger created by allowing hunting on Waterbury Watershed property;
 i. they failed to implement any appropriate policies and procedures to limit the risk of injury to members of the general public including plaintiff's decedent when they knew or should have known it was unsafe and unreasonable not to do so;
 j. they failed to appreciate and take appropriate steps to alleviate the dangerous and unsafe condition created by allowing hunting in close proximity to Pitch Road when they knew or should have known it was unsafe and unreasonable not to do so.
Although Waterbury initially argued that the Recreational Use Statute § 52-557f et seq exempted it from liability in connection with this incident, the recent decision in Conway v.Town of Wilton, 238 Conn. 653 (1996) has held that this statute does not apply to municipalities. The court in that case did point out that the reason it found that the legislature did not intend to exempt municipalities in that statute was that in addition to its common law immunity, the legislature had codified municipal immunity under § 52-557n.
 "General Statutes 52-557n, enacted as part of tort reform in 1986; Public Acts 1986, No. 86-338, 13; was intended, in a general sense, both to codify and to limit municipal liability . . . Sanzone v. Board of Police Commissioners, 219 Conn. 179, 188, 592 A.2d 912
(1991). In 1971, when the act was enacted; Public Acts 1971, No. 249; as well as in 1967, immunity for municipalities was alive and well. Accordingly, there was even less incentive to craft the act in order to grant immunity to an entity that was already protected in order to supplement available recreational land." Scrapchansky v. Plainfield, supra, 226 Conn. 469 n. 7 (Katz, J., dissenting). Id.
It is Waterbury's position that § 52-557n(b)(6) provides it immunity from the claim asserted by Kevin Elliot. It is the CT Page 3200 city's position that the injury was caused by someone who was not its agent or employee. General Statutes § 52-557n(b)(6) provides that:
 Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: . . . (6) the act or omission of someone other than an employee, officer or agent of the political subdivision.
Section 52-557n(a)1B provides a municipality shall be liable for damage to person or property caused by negligence in the performance of functions from which it derives a special corporate or pecuniary benefit. Section 2-557n(b)(2) provides that not withstanding the provisions of subsection (a) a municipality or its employees shall not be liable for damages resulting from the condition of a reservoir, dam, canal, conduit drains or similar structure when used by a person or a manner which is not reasonably foreseeable. Section 52-557 (c)(b)(6) therefore applies to negligence of political subdivision in the performance of functions which create pecuniary benefits and applies to the conditions of reservoirs. That subsection covers the water system lands and operations subject of this suit, even if they be termed a proprietary function. See Richmond v.Norwich, 96 Conn. 582.
The words of the statute indicate that a municipality is not liable of damages to person or property resulting from the act or omission of someone other than an employee, officer, or agent of the political subdivision. The purpose of the enactment of the statute to protect municipalities from liability when the municipality is not directly negligent.
Representative Wollenburg, speaking before the House of Representatives during debate of PA 86-338, stated thatPublic Act 86-338 will have the affect of "limiting the liability to municipalities to a great extent." House of Representatives, 1986 session, May 1, 1986, p. 5740.
Historically it is well established that many exceptions to governmental immunity imply that the act or omission of the municipality must be the sole proximate cause of the plaintiff's CT Page 3201 damages. Subsection b(6) was passed in the context of the rule of sole proximate cause. Section 52-557n(b)(6) could be construed to mean that a municipality may not be liable when damages result, even partially, from the acts of third persons.
Similar statutes have been construed to include a sole proximate cause standard. In the case of Bartram v. Sharon,71 Conn. 686, our Supreme Court first announced that sole proximate cause was to be the standard for determining liability under the municipal highway liability statute.
Bartram laid down the sole proximate cause standard for liability under the municipal highway liability statute, Connecticut General Statutes, § 13a-149. The reasoning ofBartram was also applied to the state highway liability statute.Perrotti v. Bennett, 94 Conn. 533 (1920). Since Perrotti, the Connecticut Supreme Court has consistently applied the sole proximate cause standard to actions brought under § 13a-144, the state highway liability statute. See, e.g., Williamson v.Commissioner, 209 Conn. 310 (1988); Kolich v. Shugrue,198 Conn. 322 (1986); Comba v. Ridgefield, 177 Conn. 268 (1979); Tuckel v.Argroves, 148 Conn. 366 (1961).
The rule of the sole proximate cause was reexamined and affirmed in the case of White v. Burns, 213 Conn. 307 (1990). The court declared in White that the state highway liability statute "was, like the municipal statute in Bertram, a carve-out of sovereign immunity, and it `to be read as giving no rights not expressly granted. "So, we believe now, as we did in Perrotti, that Bartram correctly said: `When the Statute says we will give certain person who are injured through defects in the highway, a just compensation, it by no means follows and ought not to be implied that the terms of this gift include those who are really injured by the illegal acts of other persons responsible for their wrongs.'" Id. at 331 (quoting Bartram at 696).
Whether § 52-557 (n)(b)(6) establishes a rule that a person must be injured solely and proximately from the acts or omissions of the municipality, it does establish a rule that the municipality's negligence be the direct cause of the injury and not that of a third party.
Section 52-557n was passed in 1986 as a part of the Tort Reform Act. It codified and limited the existing law with respect to municipal liability. Sanzone v. Board of Police Commissioners, CT Page 3202219 Conn. 179, 188. The legislative history[2] sets forth the intent of the statute to make the municipality liable for damage directly caused by the municipality and not directly by third party.[3]
In Dasilva v. Bridgeport, Superior Court, Judicial District of Fairfield at Bridgeport, No. CV90-0276375, June 18, 1992 (Spear, J.), the plaintiff alleged he was mugged while walking along a street in the City of Bridgeport. He was then dragged into a building which was once used as a firehouse by the City of Bridgeport, and was thrown out a second floor window. The plaintiff claimed that the employees of the City of Bridgeport were responsible for inspecting and maintaining that firehouse even though the City no longer owned the firehouse.
The City of Bridgeport successfully moved to strike the part of the complaint which sounded in negligence. Bridgeport relied on Section 52-557n(b)(6). The court wrote "[t]his statute shields a municipality from liability in a situation as alleged in the first two counts [alleging negligence of employees and indemnification for such negligence] from liability for the tortious or criminal acts of third parties. Defendant also points out in its brief . . . that the legislative history of this act, part of what is generally known as `Tort Reform', clearly states the reason for the enactment of the statute. Representative Jaekle made the following statement in support of the legislation:
 `[S]ubsection (b) tries to define specific areas of municipal responsibility. I like to general regard it as one party removed from actually causing any damages. And, specifically it removes that liability from the municipality.
 Not for their direct actions, but for the actions of somebody else that through very creative lawyers, towns have been liable for the actions of others.'
Id. at page 2.
The facts are not disputed that the actions of the hunter, Cook, in discharging his shotgun toward Kevin Elliot resulted in the death of Mr. Elliot. It is not anywhere alleged or claimed that Cook was an employee, official or agent of Waterbury at the time, but rather a hunter, given permission to hunt the Waterbury CT Page 3203 Watershed. It is undisputed that Cook's negligence directly caused an injury and the municipality is sought to be held accountable for allowing the third party to use its property. Here, the municipality is only indirectly involved and is "one step removed."
Waterbury also argues that the defendants have governmental immunity for discretionary acts.
Waterbury is alleged to be negligent in allowing hunting at the watershed, failing to post warning signs, failing to adequately supervise and inspect the hunting, failing to instruct hunting in the area, failing to obtain a health service permit, failing to investigate and appreciate hunting incident complaints, failing to implement appropriate hunting policies, failing to appreciate and take appropriate steps to alleviate dangerous and unsafe hunting conditions.
Waterbury argues that since the conduct complained of involved an exercise of judgment and it is not alleged or shown that the discretionary acts subjected an identifiable person to imminent harm, its employees are immune from liability.
Section 52-557n(a)(2)(B) of the General Statutes provides, in part, that a municipality is not liable, except as otherwise provided, for personal injury caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority granted by law. Section 52-557n was enacted as part of Tort Reform Act and codified the law of municipal liability and immunity. Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 188. See 20 Connecticut Law Review, p. 203, Connecticut Tort Reform Act and Municipalities and Building Officials Liability, at pp. 221-222.
In Evon v. Andrews, 211 Conn. 501 (1989), the Supreme Court upheld the striking of a complaint against Waterbury officials for their failure to make proper inspections of a building or undertake remedial action to correct deficiencies which caused a fatal fire. The court held that these actions were discretionary and the municipality and its employees were immune from liability in the absence of a discrete readily identifiable group thereafter subject to imminent harm.
The decision whether to allow hunting at the Waterbury watershed, to post warning signs, to adequately supervise and CT Page 3204 inspect hunting, to restrict hunting, to investigate and appreciate hunting incident complaints, to implement hunting policies, to appreciate and take appropriate steps to alleviate hunting dangers all undoubtedly required an exercise of judgment[4].
"The act of promulgating a policy, is a discretionary activity. A policy by definition is a definite course or method of action selected from among alternatives to guide and determine present and future decisions." Heigl v. Board of Education,218 Conn. 1, 4-5.
Although under prior case law the operation of a water supply system was held to be proprietary as opposed to governmental, statutory changes in governmental liability have applied the governmental discretionary immunity to proprietary functions of municipal government. Section 52-557n, General Statutes, a(1)B, a(2)B.
This immunity has also been applied by case law to protect such discretionary acts by the agents, officers or employees of municipalities. Shore v. Stonington, 187 Conn. 147, 153.
Accordingly, the motion for summary judgment as to Counts One and Two is granted.
 II.
In Count Three of the complaint, the plaintiff alleges Waterbury created or participated in the creation of a nuisance. The nuisance was created by Waterbury allowing hunting on the Watershed during which Cook fatally shot Kevin Elliot. Section 52-557n(c) codifies municipal liability for nuisance and Section 52-557 (b)(6) applies here as well. Accordingly, the motion for summary judgment is granted as to Count Three.
 III.
In Count Four, Elliot alleges that Waterbury was reckless in its conducting hunting at the watershed. Elliot alleges that Waterbury actually knew Pitch Road was dangerous for public travel because of hunting, but failed to take appropriate steps to alleviate the danger.
In Count Eight, Elliot alleges that Waterbury caused Kevin CT Page 3205 Elliot's death by the "wilful or malicious failure to guard against a dangerous condition, use or activity, to wit hunting."
Recklessness has been defined to require a conscious choice of a cause of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which could disclose this danger to any reasonable man. It pertains to conduct involving a substantially greater risk of harm than that which is necessary to make conduct negligent. Brock v. Waldron,127 Conn. 79, 87 (1940); Rogers v. Doody, 119 Conn. 532, 535.
Wilful or malicious conduct has been defined in the context of recreational use of land to mean the actor both intended his conduct and that it harm another. Warner v. Leslie ElliottConstructors, 194 Conn. 129, 138-9. The term intentional harm has been extended to circumstances where the actor knew of a substantial certainty of harm and nonetheless proceeds. Suarez v.Dickmont Plastics Corp. , 229 Conn. 99, 122.
The plaintiff argues that his submissions are sufficient for a trier of fact to find that allowing hunting in the Waterbury Watershed near Pitch Road with shotguns[5] was reckless or wilful or malicious conduct.
The plaintiff's submissions are that some hunters on watershed land had acted illegally in discharging firearms near residences.[6] No such complaints were received concerning Pitch Road, rather, the complaints came from other areas. One complaint concerned a shot fired over the road of a Wigwam Road resident (in an unnamed town) from the direction of Waterbury Watershed land. The submission also refers to the Watershed's supervisor's safety concerns over allowing hunting on lands maintained by his personnel.
The defendants, Rainone, Iorio, Minnocci and Bergin, have also submitted affidavits in support of their motions for summary judgment. In their affidavits, each one claims knowing Kevin Elliot was jogging on Pitch Road on the date and each denies having intent to injure him. The plaintiff has submitted materials that reflect Rainone received complaints about hunting on the watershed lands concerning hunters on neighboring land, was told his employees at the reservoir were afraid of hunting, told the previous mayor, Santopietro, in 1988 or 1989 and former Alderman Iarrapino that hunting should be stopped, and that he never received any complaints about shooting from or near Pitch CT Page 3206 Road.
The defendant, Bergin, as Mayor, denies issuing any permits to hunt deer at the Morris watershed, or have any involvement in the day to day operation of the deer hunting program a the watershed property.
The defendant, Iorio, stated she was in charge of hunting at the watershed and she relied on DEP regulations for hunting season. She stated no fee was charged for such a permit.
The defendant, Joseph Rainone, former Water Department Superintendent, stated he was in charge of water supply area, that hunting was allowed when he took over, and that he supervised and advertised the hunting under the regulation of the State Department of Environmental Protection.
Essentially, the plaintiff claims allowing hunting with firearms is conduct which is reckless or wilful or malicious. Hunting with firearms, however, is a legal recreational activity supported by legislation and use of public funds. See Section 26-60 General Statutes, et seq. Many seeking recreation in the outdoors do so by hunting with firearms. Elevating the allowance of hunting in itself to the level of recklessness or wilful or malicious conduct would end public hunting in Connecticut.
The plaintiff here has presented no reasonable grounds in the submissions upon which a trier of fact could find that such an allowance on a large tract of wood lots itself creates a greater risk of harm than ordinary negligence or a substantial certainty of such harm.
Accordingly, the court grants summary judgment as to Counts Four and Eight of the complaint.
B. TOWN OF MORRIS
The plaintiff has asserted claims against Morris and or their employees in three counts. Count five alleges negligence, count six recklessness, and count seven against Morris sounds in nuisance.
Morris has argues, as did Waterbury, that the Recreational Use Statute § 52-577n provided immunity to it as a recreational land owner. The court has discussed above the impact CT Page 3207 of Conway v. Town of Wilton, 238 Conn. 653, decided after these motions were initially made, to that argument, and therefore will not rehash it here. Suffice it to say that Morris is not an "owner" under that statute and it is not immune under that statute. The question is whether it has immunity under any other statute or law.
Morris, like Waterbury, claims governmental immunity provides a defense to all the claims of the plaintiff.
 I.
The claims of negligence in Count Five against them are set forth in the complaint:
 a. they failed to take appropriate and reasonable steps to warn members of the general public using Pitch Road of the danger created by hunting activities on the adjacent Waterbury Watershed property when they knew or should have known it was unsafe and unreasonable not to do so;
 b. they failed to post signs along the public roadway of the presence of hunting activity on the adjacent Waterbury Watershed property when they knew or should have known it was unsafe and unreasonable not to do so;
 c. they failed to take action to prevent hunting on property adjacent to their public roadway when they knew or should have known it was unsafe and unreasonable not to do so;
 d. they failed to appreciate and take appropriate steps to alleviate the dangerous condition created by hunting on property adjacent to Pitch Road when they knew or should have known it was unsafe and unreasonable not to do so;
 e. they failed to conduct or improperly conducted inspections of Pitch Road;
 f. they failed to close the road to public travel when they knew or should have known it was unsafe and unreasonable not to do so under the CT Page 3208 circumstances then and there existing.
Here Morris is alleged to be negligent in failing to post hunting warning signs on Pitch Road, failing to close Pitch Road or failing to stop hunting on land adjacent to Pitch Road.
Morris argues that since the conduct complained of involved an exercise of judgment and it is not alleged or shown that the discretionary acts subjected an identifiable person to imminent harm, its employees are immune from liability.
Section 52-557n(a)(2)(B) of the General Statutes provides, in part, that a municipality is not liable, except as otherwise provided, for personal injury caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority granted by law. Section 52-557n was enacted as part of Tort Reform Act and codified the law of municipal liability and immunity. Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 188. See 20 Connecticut Law Review, p. 203, Connecticut Tort Reform Act and Municipalities and Building Officials Liability, at pp. 221-222.
In Evon v. Andrews, 211 Conn. 501 (1989), the Supreme Court upheld the striking of a complaint against Waterbury officials for their failure to make proper inspections of a building or undertake remedial action to correct deficiencies which caused a fatal fire. The court held that these actions were discretionary and the municipality and its employees were immune from liability in the absence of a discrete readily identifiable group thereafter subject to imminent harm.
The decision whether to close Pitch Road adjacent to the Waterbury Watershed or to post warning signs that hunting was being allowed on those woods, or, if possible, to stop hunting on private land in Morris undoubtedly required an exercise of judgment.[7] Each action complained of involves discretionary acts, that is, conduct requiring "in some measure the exercise of judgment by a municipal employee." Evon v. Andrews,211 Conn. 501, 507.
As the Appellate Court observed in Brown v. Branford,12 Conn. App. 106 at 110
 "The promotion of the comfort, safety and overall welfare of the general public constitutes a recognized CT Page 3209 public service and such a public service indisputably involves the exercise of police power which is the supreme power of government." (Citations omitted.)
The Brown court pointed out that it has long been the law "that a municipality is immune from liability for the performance of governmental acts, as distinguished from ministerial acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." Brownv. Branford, supra at page 110.
It is long established that the ownership, control and supervision of its streets are governmental functions and not proprietary ones. Volume 18, McQuillin Municipal Corporation 3d, Section 53, 41, page 349.
In Wadsworth v. Middletown, 94 Conn. 435 (1920), the Supreme Court observed that public officials in maintaining highways are immune from liability for negligence in the performance of that governmental and discretionary duty.
In Sousa v. Brookfield, 1992 Ct. Casebase 4730, the superior court held that the duty to properly maintain a public highway is a governmental function. The replacement and installation of stop signs and a policy to perform such tasks was a discretionary and not a ministerial act.
Furthermore, Kevin Elliot was not alleged or shown by the submissions to be in "imminent harm" from any act of Morris. As pointed out in the Evans case, where the risk of an injury causing event happening implicates a wide range of factors that can occur, if at all, at some unspecified time in the future, the class of possible victims of that event is by no means a group of identifiable persons.
Evon v. Andrews, supra, supports the Morris employees' immunity from liability for negligence. Accordingly, summary judgment on behalf of Morris is granted as to Count Five.
 II.
In the Sixth Count, Elliot alleges Morris acted recklessly in maintaining and keeping open Pitch Road adjacent to the Waterbury Watershed lands. The plaintiff alleges that Morris actually knew and that Pitch Road was dangerous for public travel. CT Page 3210
The defendants have presented affidavits they were not aware of any danger to people using Pitch Road because of hunting. The plaintiff thereafter filed newspaper accounts of some hunting incidents in Litchfield county, since these newspapers were often read by some of the Morris defendants.
The news accounts were that some hunters on Waterbury Watershed land were uncivil, trespassed on private property illegally discharged firearms near a horse stable in Litchfield, and that on Wigwam Road in some Litchfield County town, a resident of that street had a stray bullet pass over his head from the direction of the Waterbury Watershed property. Other complaints of trespassing by hunters came from other Wigwam Road residents adjacent to Waterbury Watershed. There were no news reports of any incidents on Pitch Road.
It is true an exception to the discretionary immunity doctrine arises if the employee's conduct involved malice, wantonness or intent to injure. Evon v. Andrews, 211 Conn. 501,505.
The plaintiff does not allege or make a showing of any malice, wantonness or intent to injure. In their absence, the rule of immunity from liability applies. Stiebitz v. Mahoney,144 Conn. 443, 448.
Accordingly, the court grants summary judgment in favor of Morris as to Count Six.
 III.
In the Seventh Count, Elliot claims that Morris created and maintained a nuisance on Pitch Road. The complaint alleges that Morris:
 permitted hunting to remain in a public roadway when the passage of travelers would be obstructed or endangered or the roadway thereby encumbered in violation of Connecticut General Statute Section 19a-335 and when they knew or should have known it was unsafe and unreasonable to do so;
 maintained Pitch Road as a public roadway open to to [sic] members of the general public, despite dangerous CT Page 3211 conditions created by the hunting on adjacent property, when they knew or should have known that it was unsafe and unreasonable to do so.
Morris argues for summary judgment on this count because it is legally insufficient. Morris argues that Elliot has not alleged the essential allegations, including that the individual Morris defendants created and maintained a dangerous condition by an affirmative act.
Elliot argues that its nuisance count is legally sufficient, because Morris maintained Pitch Road to make it accessible to the public, and that its officers had prior notice or should have had notice that hunting occurred on the Waterbury Watershed lands. Elliot argues that this evidence could demonstrate that the Town's actions in maintaining the road "is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty." Additionally, Elliot argues that the nuisance claim is based on a violation of General Statutes §19a-335[8].
Elliot's reliance on General Statutes § 19a-335 is misplaced. General Statutes 19-335 prohibits a person from placing an obstruction in a highway and provides the court may order removal of the obstruction. General Statutes § 19a-335. General Statutes § 19a-335 does not create a private cause of action for a plaintiff. Duncan v. Town of East Hartford, judicial district of Hartford/New Britain at Hartford, Docket No. 368608 (Feb. 5, 1992, Schaller, J., 7 CSCR 295).
To support a claim for nuisance, "a plaintiff must prove that: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was a proximate cause of the plaintiffs' injuries and damages. . . ." (Citations omitted; internal quotations omitted.)State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 183,527 A.2d 688 (1987).
Nuisance actions against municipalities are of three types: (1) those resulting from statutory violations; (2) intentional nuisances (3) negligence-based nuisances. Dingwell v. Litchfield,4 Conn. App. 621, 624, 496 A.2d 213 (1985), citing Carabetta v.Meriden, 145 Conn. 338, 339-40, 142 A.2d 727 (1958). The first CT Page 3212 two categories are referred to as absolute nuisances. Carabettav. Meriden, supra, 145 Conn. 340. Since Elliot has not alleged a nuisance based on negligence, the nuisance claim must qualifies as an absolute nuisance claim.
To establish an absolute public nuisance, "the plaintiff's burden includes two other elements of proof: (1) that the condition or conduct complained of interfered with a right common to the general public; . . . and (2) that the alleged nuisance was absolute, that is, that the defendants' intentional conduct, rather than their negligence, caused the condition deemed to be a nuisance. (Citations omitted; internal quotations omitted.) Statev. Tippetts-Abbett-McCarthy-Stratton, supra, 204 Conn. 183. Additionally, "Liability can be imposed on the municipality only in the event that, if the condition constituted a nuisance, it was created by some positive act of the municipality." Brennan v.West Haven, 151 Conn. 689, 692, 202 A.2d 134 (1964).
Elliot alleged that Morris "maintained Pitch Road as a public roadway open to members of the general public, despite dangerous conditions created by the hunting on an adjacent property." Hunting adjacent to the public roadway is the condition alleged to constitute the nuisance. There is no question of fact, however, existing as to whether Morris intentionally created the condition which was the nuisance. The pleadings and the plaintiff's submissions establish that the hunting was being conducted on the Waterbury watershed adjacent to Pitch Road. There is no showing hunting was allowed by Morris on Pitch Road itself or that Morris could disallow it on lands it did not own or control.
The extension of the law of nuisance, a liability for maintaining a dangerous condition on one's land, to liability due to adjoining property owners' use of their lands would be an intolerable burden on property ownership. In the absence of control, it should not be the responsibility of a neighboring property owner to be held to answer for the conduct of another property owner.
Accordingly, summary judgment is granted in favor of Morris as to Count Seven.
In summary, the court will grant the defendant Waterbury's motion #179 for summary judgment as to counts 1, 2, 3, 4 and 8 of the amended complaint, and will likewise grant Morris' motion CT Page 3213 #178 for summary judgment with respect to counts 5, 6, and 7.
PELLEGRINO, J.