[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In an amended Complaint dated, January 5, 2001, the plaintiff alleges that on January 7, 1998, she was the owner and operator of a 1996 Toyota Camry and was traveling north on Woodward Avenue in the city of New Haven when a car traveling south on Woodward Avenue drove over a manhole cover, causing said manhole cover to dislodge and become airborne, crossing into the northbound lane, striking the left side of the plaintiff's car near the driver's door. The airborne manhole cover CT Page 13351 allegedly caused the plaintiff to sustain and suffer personal injuries and losses.
Based on the testimony and the evidence admitted at trial, the Court finds the following facts: On January 7, 1998, the plaintiff while using due care was driving northbound on a two way street known as Woodward Avenue in the City of New Haven. Woodward Avenue is a public highway that the City of New Haven in bound to repair. While traveling on said Woodward Avenue, plaintiff saw a vehicle on the other side of the road, and coming from the opposite direction. The plaintiff then saw an object flying through the air and said object struck the left side of her car in the driver's door area. Plaintiff felt the impact of manhole cover when the cover hit the driver side door with such force that the door made contact with her. The plaintiff pulled over to the right side of the road and parked. Plaintiff discovered that the object that had struck her vehicle was a manhole cover that had originally been located on the southbound side of Woodward Avenue. An ambulance, the New Haven Fire Department and the New Haven Police Department responded to the scene of the accident. Plaintiff's vehicle was so badly damaged that the fire department had to use a crow bar to open the door and extricate her. Plaintiff was not transported to the hospital. Plaintiff did not give a statement to the New Haven Police Department at the scene the accident, but subsequently gave a statement over the telephone from her home.
The day after the accident the plaintiff visited her physician, David I. Riccio, M.D., complaining of pain in her left pectoral area. She was given medication for the pain and a muscle relaxant. Plaintiff saw her doctor seven or eight times during the first couple of weeks after the accident and was out of work for a period of four days. At the time plaintiff was employed by Attorney Edward Jacobs as a legal secretary. Plaintiff used her vacation time for the days that she was did not report to work.
Starting on or about April 15, 1998, the plaintiff was treated at Temple Medical Center and was given physical therapy for a period of approximately nine (9) months.
In addition to David I. Riccio, M.D., her family physician, plaintiff also saw Norman R. Kaplan, M.D., of Connecticut Orthopaedic Specialists, P.C. Plaintiff was complaining of pain in the areas of her left elbow, shoulder and neck. Her mobility was affected and she could not move her left arm properly. Plaintiff could not sleep well because she usually slept on her left side, but could not do so because of the pain on the left side of her body. Plaintiff felt that the medication that she was prescribed was not working. Plaintiff had also undergone treatment with cortisone on at lease two occasions but it did not give her any relief. CT Page 13352
On August 30, 1999, Norman N. Kaplan, M.D., opined, in a report of same date that the plaintiff had a twelve percent (12%) permanent partial disability due to "cervical spasm sprain syndrome" and a ten percent (10%) permanent partial disability at the elbow for an "unstable ulnar nerve" in her left elbow.
On November 30, 2000, the plaintiff sought and received a "second opinion" concerning the diagnoses made by Norman Kaplan, M.D. On said date, Robert W. Nolan, M.D., generated a report with a diagnosis that the plaintiff was suffering from cubital tunnel syndrome and discussed treatment options with the plaintiff. Dr. Nolan was in agreement with Dr. Kaplan that there were indications for surgery to the plaintiff's left elbow.
On January 3, 2001, the plaintiff underwent surgery to move the ulner nerve in her elbow because of the lack of feeling in her pinky and numbness and pain in left elbow down to fingers. On or about February 8, 2001, plaintiff began physical therapy at "STAR" Sports Therapy 
Rehabilitation, of Hamden, CT. Plaintiff continued therapy until April 11, 2001.
As a result of the surgery, plaintiff was out of work for a period of one week. Plaintiff has considered more surgery, but has opted not to undergo further surgeries because there is no guarantee that they would bring relief. Plaintiff is currently taking Tylenol but no other medications for relief of pain. Plaintiff is afraid to drive her motor vehicle and is worried about driving during the winter driving season.
Plaintiff has a life expectancy of twenty nine-point four (29.4) years.
Plaintiff was and is limited in what she could do around the house, including, dressing, blow drying her hair, and things like taking cloths down stairs. Plaintiff was and is not able to reach out with her left arm. The aforementioned surgery occurred in January of 2000, helped as far as the numbness in her two fingers, but the pain persisted. As of the date of trial plaintiff is still in pain.
Before the accident that is the subject of this action the plaintiff was not suffering from any of the pain or numbness that she has complained of f since the accident in question.
Before the start of trial, the parties Stipulated as to the admission of all sixteen (16) of the plaintiff's exhibits that were to be introduced at trial. CT Page 13353
Plaintiff brings this action by way of a one count Amended Complaint, dated January 5, 2000. The action is brought pursuant to the provisions of § 13a-149 of the Connecticut General Statutes.
Section 13a-149 C.G.S. is entitled "damages for injuries by means of defective roads and bridges" and is also commonly known as the highway defect statute. This statute provides that:
 Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair.
 No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby.
Whereas plaintiff brings this action pursuant to the highway defect statute, it is necessary to discuss some of the history of said statute.
 "A town is not liable for highway defects unless made so by statute." Hornyak v. Fairfield, 135 Conn. 619, 621, 67 A.2d 562 (1949). Section 13a-149 affords a right of recovery against municipalities. Martin v. Plainville, 240 Conn. 105, 109, 689 A.2d 1125 (1997). Under § 13a-149," [a]ny person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in CT Page 13354 repair . . .
 Whether a highway is defective may involve issues of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law. . . ." Id., 201; see id. (determining that "[w]hether or not the accident was caused by the defective traffic light, the plaintiffs' claim that it was caused by the defective traffic light is, as a matter of law, a claim based upon a defective road'"); see also Older v. Old Lyme, 124 Conn. 283, 285, 199 A. 434 (1938) ("[t]he question whether a highway is defective, the answer to which may depend on a great variety of circumstances, is in general one of fact but determination whether or not the facts found warrant, in law, the conclusions reached therefrom is open on appeal"). "[A] highway defect is `[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . .'" Sanzone v. Board of Police Commissioners, supra, 219 Conn. 202, quoting Hewison v. New Haven, 34 Conn. 136, 142
(1867). "`[I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair.'" Sanzone v. Board of Police Commissioners, supra, 202, quoting Comba v. Ridgefield, 177 Conn. 268, 271, 413 A.2d 859 (1979)
 Ferreira v. Pringle, 255 Conn. 330, 341 (2001)
There are four things that a plaintiff must prove by a fair preponderance of the evidence in order to prove a breach of duty under the provisions of Section 13a-149 of the Connecticut General Statutes:
 To prove a breach of statutory duty under § 13a-149, "the plaintiff must prove, by a fair preponderance of the evidence [:] (1) that the highway was defective as claimed; (2) that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have CT Page 13355 known of that defect; (3) that the defendant, having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence." Lukas v. New Haven, 184 Conn. 205, 207, 439 A.2d 949 (1981); accord Janow v. Ansonia, 11 Conn. App. 1, 2-3, 525 A.2d 966 (1987)
 Prato v. City of New Haven, 246 Conn. 638, 642 (1998)
In the instant action, paragraph 3 of the plaintiff's amended complaint provides in pertinent part that:
 . . . A car travelling southbound on Woodward Avenue, at its intersection with Upson Terrace, drove over a defective manhole which caused the cover to become dislodged and airborne, thereby exposing a hole in the street. The manhole cover crossed into the northbound lane of Woodward Avenue, and struck the left side of the plaintiff's car near the driver's door. The airborne manhole cover caused the plaintiff to sustain and suffer the personal injuries and losses hereinafter set forth.
(emphasis added)
During the course of the trial the plaintiff did not introduce any evidence of a "defective manhole" but her expert, Richard A. Ziegler, a civil and forensic engineer with thirty six (36) years of experience, opined that the manhole cover was too small for the frame and that this caused a defective condition. Mr. Ziegler testified that there are literally hundreds of different size manhole covers and frames. Manhole and manhole covers usually show up as a unit. The witness testified that there is usually a one-quarter (1/4) inch gap between the manhole cover and the manhole. Debris usually collects and causes a tight fit. Mr. Ziegler speculated that the cover was probably removed and the opening of the manhole was cleaned and the cover replaced.[1] Without the debris causing a tight fit the manhole cover was loose and a car went over it, it flipped and became airborne.
During cross-examination, Mr. Ziegler stated that this was an unusual case for him. That this case was only his third manhole case and of the other two in which he testified only one of them was factually similar in CT Page 13356 that it involved a dislodged manhole cover.
During is cross-examination, Mr. Ziegler stated that he never went to the scene of the accident, and that he never examined the manhole cover involved in the subject incident. He further testified that he never examined the manhole. He never conducted test at the site. He had no first hand knowledge of the manhole or manhole cover involved here. His opinion was derived from looking at pictures of the manhole and manhole cover that were taken ten (10) days after the date of the accident and were provided to him by the plaintiff. He further testified that he did not think that it would have been advantageous to look at the site.
When queried about the manhole in the photograph in Exhibit 14, he stated that it showed a proper fitting manhole cover. He further testified that he didn't think that the picture of the manhole cover showed the same manhole cover that was the subject of the accident, but he had no knowledge or information to show that the manhole covers had been changed.[2]
Mr. Jacques A. Kressmann, an individual who the parties stipulated to be an unavailable witness testified during his deposition (Plaintiff's Exhibit 15) on June 2, 2000, that he inspected the complaint files in the Office of the City Engineer of the City of New Haven and did not find any complaints concerning the subject manhole or manhole cover. At the time of the Deposition Mr. Kressmann was employed as Chief of Construction in the City of New Haven's Department of Engineering.
Mr. Jeffrey Pescosolido, Chief of Operations, of the Department of Public Works of the City of New Haven testified that he was not aware of any complaints concerning the manhole cover involved in this case before the accident in question. Reported defects are logged in and inspected. A daily inspection sheet is used, however, if there are no records of inspections, it does not mean that inspections were not done. Mr. Pescosolido further testified that he does not know if the manhole cover in question was ever replaced with another manhole cover after the accident that is the subject of this litigation.
Mr. Richard Miller, the Director of Engineering and Public Works testified that he was not aware of any problems or complaints concerning the manhole in question. He also testified that there were two hundred twenty (220) miles of street and four hundred thirty (430) miles of sidewalk, as well as eight thousand (8000) manhole covers on the sanitary and storm sewer systems in the city of New Haven. He testified that he is familiar with the street in question and was so in 1999. Approximately twelve hundred (1200) cars used the subject road on a daily basis around the time of the accident, and that he was unaware of any other incidents CT Page 13357 concerning the subject manhole cover.
Mr. Miller testified that he does not agree with the plaintiff's expert as to the reason that the manhole cover became unseated and became airborne. He opined that there could be several reasons that this could have happened, including it being too small, the manhole being opened and the cover not re-seated properly or a storm surge popping the cover up.
 "The credibility of expert witnesses and the weight to be given to their testimony and to that of lay witnesses . . . is determined by the trier of fact. . . . In its consideration of the testimony of an expert witness, the trial court might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. it might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them.
 "It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . including expert testimony, and can construe such evidence in a manner different from the parties' assertions." (Citations omitted; internal quotation marks omitted.) State v. DeJesus, 236 Conn. 189, 201, 672 A.2d 488 (1996)
 State v. Alvarado, 62 Conn. App. 102, 112 (2001).
After considering the plaintiff's expert's testimony in its totality, including his training, experience and expertise as well as the substance of his testimony, his methodology and his demeanor while he testifying, the Court comes to the conclusion that Mr. Ziegler was not very credible and weighs his testimony accordingly.
Although the plaintiff asserts that the defect in the highway in this matter was that the manhole cover was too small thereby rendering the highway defective, she has not met its obligation by a fair preponderance of the evidence of proving that to be the case. The plaintiff has failed to establish the requirement of establishing a cause of action pursuant to § 13a-149 C.G.S., i.e. that the highway was defective as claimed. See Prato v. City of New Haven, Id. at 642.
Even if the Court could find that the plaintiff had sustained its burden of proof concerning the existence of a defect, she still did not establish by a fair preponderance of the evidence proof that the CT Page 13358 defendant had either actual or constructive notice of any defect or that it had time to remedy it.
 "A municipality is not charged with the responsibility of keeping its streets and sidewalks in an absolutely safe condition." Mausch v. Hartford, 184 Conn. 467, 469, 440 A.2d 157 (1981). While it does have a duty to inspect its streets and discover defects, "[I]t is not the duty of a municipality to keep its highways reasonably safe for public travel under all circumstances, nor to use all possible means to bring that result about; rather its duty is to make such efforts and employ such measures to that end as, in view of all the existing circumstances and conditions, are in themselves reasonable." (Internal quotation marks omitted.) Cohen v. Hamden, 27 Conn. App. 487, 494, 607 A.2d 452 (1992). Further, the conspicuousness of the defect, as well CT Page 3687 as the number of streets and walkways within its boundaries, must be taken into consideration in determining reasonableness because "notice of a particular defect depends not on whether a reasonable inspection of a particular street would have disclosed it but rather whether the defect would have been disclosed by a reasonable inspection of the streets as a whole." Mausch v. Hartford, supra, 184 Conn. 469.
Cited in Hatata v. West Haven, No. CV 00-0069027 (Mar. 19, 2001),2001 Ct. Sup. 3684 (Mancini, JTR)
In the current situation, the more credible and convincing evidence shows by a fair preponderance of said evidence that there was no notice that the manhole cover in question would become dislodged and cause injuries, even the plaintiff her self could not testify that she saw any problems until she actually saw the manhole cover in the air. After evaluating the credibility of the all of the witnesses and expert witnesses and determining what weight to give their testimony, as well as determining that the better, weightier and more persuasive evidence that was presented at trial does not support the conclusion that the plaintiff has established by a fair preponderance of the evidence that the defendant is liable pursuant to § 13a-149 C.G.S., the Court accordingly finds that judgment may enter in favor of the defendant.
Richard A. Robinson, J.